PHILIP SIEBERT and Wife v. ELEANOR QUESNEL and Others.[1]

June 10, 1896.

Nos. 9860—(91).

| 65 | 107 |
|----|-----|
| 175 | 179 |
| 65 | 107 |
| 85 | 386 |

**Suretyship—Married Woman—Consideration.**

> Whether a contract executed by a married woman in connection with her husband is one of suretyship, is to be determined by a consideration of whether or not it was made by her upon a consideration running to her, or for the benefit of her estate.

**Same—Release of Surety—Failure to Present Claim against Estate of Principal.**

> When it appears from a contract entered into by a husband and wife that she is simply a surety for the payment of his individual debt, and he dies, leaving an estate amply sufficient to pay and discharge all claims against it, if duly presented and allowed, it is incumbent upon the creditor to present his claim against such estate. If he fails so to do within the period fixed for the presentation and allowance of such claims, the surety is released from further personal liability on the contract.

Action in the district court for Ramsey county to foreclose a mortgage executed by E. Langevin, since deceased, and defendant Eleanor Langevin, his wife, now Eleanor Quesnel. In the judgment of foreclosure, which was entered in pursuance of the findings of Egan, J., it was adjudged that defendant Eleanor Quesnel was personally liable upon the note and mortgage and that plaintiffs

[1] Reported in 67 N. W. 803.

have execution against her for any deficiency that might arise upon the foreclosure sale. From an order denying a motion to set aside the judgment and for a new trial, defendants appealed. Modified.

*J. L. Macdonald*, for appellants.

*Butts & Jaques*, for respondents.

COLLINS, J. There are really but two questions for determination in this cause. First, on the face of the note and mortgage, which are to be considered as one instrument, what were the relations existing between Mrs. Langevin (now the defendant Mrs. Quesnel) and the mortgagee and her assigns? Was Mrs. Langevin a surety for the payment of Mr. Langevin's debt, evidenced by a note signed only by him, or was she simply and strictly a joint principal or obligor? If she occupied the position of a surety, any defense open to her, as such surety, at the time of the assignment of the mortgage to plaintiffs, or which has since arisen, is available in this action, brought to foreclose the mortgage, and to recover from her personally any deficit upon a sale of the mortgaged premises. The second question depends upon the answer to the first, and is: If Mrs. Langevin was a surety, in what manner have her rights and liabilities been affected by the death of her husband, the principal debtor, and plaintiffs' failure to file the note in the probate court, as a claim against the estate, within the time fixed for the presentation and allowance of claims, which expired January 21, 1892, some months after the note and mortgage were transferred to plaintiffs, and more than two years prior to the commencement of this action?

The note was given by Mr. Langevin, alone, for his pre-existing individual debt; and the failure to file it for allowance has barred all right to recover the amount as a claim against Langevin's estate, or to recover as against any of the heirs. Hill v. Nichols, 47 Minn. 382, 50 N. W. 367. This failure amounts to a voluntary release of the claim against the estate of Mr. Langevin, which was more than sufficient to meet and pay all claims against it; and, if his wife was a surety, a voluntary release of the estate of the principal debtor must have had the effect of releasing her from personal liability. The rights of a surety, the fact of suretyship being known to the creditor, are well established by repeated adjudications, and need not be stated here.

This leads to an inquiry as to the relationship which actually existed between Mrs. Langevin and the mortgagee, of which the plaintiffs had notice in the note and mortgage. Mrs. Langevin joined in all of the covenants contained in the mortgage, binding herself, her heirs, executors, and administrators, including a covenant or condition to pay the sum of money represented by his note, thus becoming obligated to pay the mortgage debt. But primarily it was the debt of Mr. Langevin. This clearly appeared from the note and mortgage, and was actually known to the mortgagee. Mrs. Langevin took no part in the negotiations which led up to the execution of the papers, and had nothing to do with the transaction, except to sign the mortgage and acknowledge its execution when presented to her. The mortgagee's agent, who transacted the business, testified that it was agreed between Mr. Langevin and himself that the wife should join in the obligation of the covenants and the promise to pay, as recited in the mortgage, but it was not claimed that she had any knowledge of this agreement. She did not contract for or receive, either in person or estate, any part of the consideration for the note, nor was her separate property bound in any way for the pre-existing debt which formed the consideration.

It is well settled that a wife is entitled to the ordinary rights and privileges of a surety, where she mortgages her separate estate for the debt of her husband. Wolf v. Banning, 3 Minn. 133 (202); Agnew v. Merritt, 10 Minn. 242 (308), and cases cited. If Mrs. Langevin had mortgaged her separate estate as security for her husband's note, she would have occupied the position of a surety. And, on principle, it can make no difference that, instead of pledging her separate estate to pay the debt, she became personally obligated to pay that debt out of her own funds or estate. Although Mrs. Langevin was a joint principal or obligor, she was also and in fact a surety, and is entitled to all of the rights of a surety, where the principal debtor has been discharged by the creditor's act. If so, it follows that when the estate of the principal debtor was released by the omission of the creditor to file a claim for allowance, it appearing that the estate was abundantly able to discharge the debt in the due course of administration, the surety for that debt was released from any further personal liability.

There is nothing in defendants' claim that because of this omis-

sion the mortgage security was also discharged, or in the contention that the trial court erred when it directed a separate judgment for plaintiffs' costs and disbursements, as to each, against such of the defendants as were duly notified that no personal claim was made against them, and then answered and took part in the trial. It is evident that they unreasonably defended, and must pay for the privilege. G. S. 1894, § 5867.

There are no other questions presented which need discussion, and the result is that, in so far as the judgment appealed from relates to the personal liability of defendant Eleanor Quesnel for the amount of the debt, it must be modified in accordance with the views herein expressed. As to the remainder of the judgment, it stands affirmed.