BOARD OF COUNTY COMMISSIONERS OF ST. LOUIS COUNTY v. SECURITY BANK OF DULUTH and Others.

January 5, 1899.

Nos. 11,358—(135).

County Funds—Deposit in Bank—Certificate of Deposit—G. S. 1894, §§ 729-735.

A bank having been designated a depositary of county funds pursuant to G. S. 1894, §§ 729-735, executed to the county a bond, with sureties, conditioned to pay interest on monthly balances of the money deposited at the rate of 2 per cent. per annum, and to hold the money and interest subject to draft, and payable at all times on demand. During the life of the bond the county treasurer, with the knowledge and consent of the board of county commissioners, deposited in the bank money belonging to the county which was part of a sinking fund accumulated to meet future maturing obligations of the county, and took therefor a certificate of deposit payable in six months, with interest at 3 per cent. per annum. *Held*, that the only authority of the county treasurer or the board of county commissioners to deposit or lend county funds is that conferred by statute, viz., payable on demand, with interest in accordance with the proposal of the bank to the county commissioners; that, notwithstanding the attempt to attach to the deposit terms not authorized by law, the money deposited as above must be deemèd a deposit under the statute, payable on demand, for which, with interest at 2 per cent., the sureties on the bond are liable.

Insolvency of Bank—Failure to File Claim—Sureties not Released.

The bank, being largely indebted to the county, became insolvent, and upon the petition of the state bank examiner a receiver of all its assets was appointed pursuant to the provisions of Laws 1895, c. 145. The board of county commissioners neglected to file the claim of the county

against the bank within the time limited for that purpose in the insolvency proceedings. The sureties never requested that the county should file its claim. *Held*, that the mere failure of the county officials to file the claim against the bank did not release the sureties either in toto or pro tanto.

Action in the district court for St. Louis county to recover $49,-513.90, upon a bond given to the county of St. Louis to secure the payment of county funds deposited in defendant bank. Defendants Joseph Sellwood and Frederick W. Paine, as sureties on the bond in suit, answered. The cause was tried before Moer, J., without a jury, who ordered judgment in favor of plaintiff. From an order denying a new trial, defendants Sellwood and Paine appealed. Affirmed.

*Billson, Congdon & Dickinson,* for appellants.

These appellants are not responsible, as sureties on the bond, for so much of the deposit in the bank as was represented by the certificate of deposit. That deposit was never within the terms and condition of the bond, or, if it was, then the contract conditions as to payment were changed by the taking of the certificate of deposit, payable six months after date instead of on demand, and at 3 per cent. instead of at 2; and by such change the sureties were discharged. A surety has a right to stand upon the very terms of his contract. Simonson v. Grant, 36 Minn. 439. The position of a surety is one strictissimi juris and the contract is to be construed most favorably to him. Detroit v. Ziegler, 49 Mich. 157.

The taking of the certificate was in express violation of the bond, as it extended the time of payment and suspended until maturity of the certificate the right of plaintiff to recover the money, and thereby the sureties were discharged. See Lundberg v. N. W. Elevator Co., 42 Minn. 37; Flenniken v. Liscoe, 64 Minn. 269; 2 Brandt, Sur. 363. Consent to a change in the conditions of the bond is not to be inferred merely from a knowledge of the change on the part of the surety, and forbearance or failure on his part to object or protest. Stewart v. Parker, 55 Ga. 656; Executors v. Brown, 12 Ga. 271; Lambert v. Shetler, 71 Iowa, 463; Edwards v. Coleman, 6 T. B. Mon. 567; 2 Brandt, Sur. § 426. G. S. 1894, § 729,

was not intended to prevent the county from making time deposits, or from making contracts such as was expressed in the certificate in question, providing for a higher rate of interest on such time deposits. Such an intention would not have been expressed in language of such doubtful import as that used.

The plaintiff owed to the sureties the duty of filing its claim in the insolvency proceeding against the bank, so as to participate in the distribution of the estate of the insolvent principal debtor; and by reason of its neglect of this duty the sureties are discharged, at least to the extent of the amount which might have been realized from such distribution. 2 Brandt, Sur. §§ 426–445; Huey v. Pinney, 5 Minn. 246 (310); Joslyn v. Eastman, 46 Vt. 258; White v. Life, 63 Ala. 419; Siebert v. Quesnel, 65 Minn. 107; McCollum v. Hinckley, 9 Vt. 143; Gillespie v. Darwin, 6 Heisk. 21; Clow v. Derby, 98 Pa. St. 432; Willis v. Davis, 3 Minn. 1 (17).

*George E. Arbury,* for respondent.

The county treasurer, the scope of whose authority is fixed by law, can only bind the county by his acts or representations while acting within the scope of his powers. When he received the certificate of deposit, he was acting entirely beyond the scope of his authority, and the contract with the bank in that behalf was void, and did not alter the contract upon which the sureties of the bank are bound. In order that a contract of a public officer shall be binding upon the public, the officer must keep within the limits of his authority. Story, Ag. § 307a; 19 Am. & Eng. Enc. 507; Mitchell v. Board of Co. Commrs., 24 Minn. 459. There was no ratification by the county commissioners of this unauthorized act of the treasurer. See Mayor v. Reynolds, 20 Md. 1; Boom v. City, 2 Barb. 104. The failure of the county officials to file a claim in the insolvency proceedings of the bank so as to participate in the assets, did not release the sureties as to the whole or part of the bond. See 4 Am. & Eng. Enc. 367; Board v. Mighels, 7 Oh. St. 109; Wehn v. Commrs., 5 Neb. 494; Clark v. Adair, 79 Mo. 536; Sutton v. Board, 41 Miss. 236; Soper v. Henry, 26 Iowa, 264; White v. County, 58 Ill. 297. See also Com. v. Brice, 22 Pa. St. 211; Haehnlen v. Com., 13 Pa. St. 617; People v. Jansen, 7 Johns. 332.

MITCHELL, J.

In an action on a bond given by the Security Bank of Duluth as a depositary of county funds pursuant to G. S. 1894, § 730, two of the sureties interposed two partial defenses, viz.:   First, that a part of the deposit, represented by a time certificate of deposit, was not within the conditions of the bond; and, second, that by reason of the failure of the county to file and prove its claim against the estate of the insolvent bank within the time for so doing as fixed by the court, the sureties had been released pro tanto,—that is, to the extent of the dividend which the county would have realized from the assets of the bank.

1. The bank was designated as a depositary of county funds for two years from March 26, 1896.   The condition of the bond in suit, which was executed on the day named, and approved on April 17, 1896, was that:

Whereas, the "Security Bank of Duluth has made application to be designated as a depositary of the funds of the said county of St. Louis for the term of two years from the date hereof, and has agreed to pay interest on such funds of said county as shall be deposited with said bank at the rate of two per cent. per annum upon the monthly balances of such deposits, such interest to be accounted for according to law, and credited on the first day of each month.

"Now, therefore, if the above-bounden, the Security Bank of Duluth, * * * shall well and truly credit such interest on such monthly balances to said county, and shall well and truly hold said funds, with accrued interest, subject to draft, and payment at all times on demand, and shall well and truly pay over on demand according to law all of said funds which shall be deposited in said bank pursuant to said designation, and said statutes as aforesaid, and all of the interest so to be credited, then this obligation shall be void, otherwise it shall remain in full force and effect."

The county treasurer of St. Louis county had in his hands over $13,000, part of a sinking fund belonging to the county, accumulated and held to meet certain future maturing obligations of the county.   This money he had deposited in the Security Bank on January 10, 1896, and taken therefrom a time certificate of deposit payable July 1, 1896, with interest at 3 per cent.   On the latter date, when this certificate matured, he took another certificate of deposit, in renewal thereof, payable six months after date, with interest at

3 per cent. per annum. This was done with the knowledge of and without objection by the board of county commissioners.

It is the deposit represented by this time certificate which the sureties claim is not within the condition of their bond. This would undoubtedly be so if the county treasurer has authority to make a deposit on such terms, or the board of county commissioners had the power to authorize him to do so; for the bond clearly refers to and covers only deposits subject to draft, payable on demand, and on which the bank was to pay interest on monthly balances at 2 per cent. in accordance with its proposal to the county commissioners pursuant to G. S. 1894, § 731.

The only authority of either the county treasurer or the board of county commissioners to lend county funds (for that is what it amounts to) is that given by Laws 1881, c. 124, as amended (G. S. 1894, §§ 729–735, inclusive). They have no authority to deposit county funds in any other place or on any other terms than those prescribed by the statute. This applies to all county funds, whatever the purpose for which they were raised. It is apparent from various provisions of the statute that it neither contemplates nor authorizes time deposits, and section 729 expressly provides that all deposits are to be on condition that they

"Shall be held subject to draft and payment at all times, on demand";

And every one is bound to know the law. The Security Bank was bound to receive on deposit, up to the statutory limit, all county funds offered in accordance with the provisions of the statute, and on the terms of its proposal. It is not material that the certificate of July 1 was in renewal of the one issued the previous January, which, according to its terms, matured on that day. The transaction was, in legal effect, a new deposit as of that date, although the idle ceremony of drawing out the money on the first certificate, and then redepositing it, was not gone through with. It constituted a deposit under the statute as of the date of July 1, and was subject to draft and payment on demand, notwithstanding the void and illegal provision as to time of payment attempted to be incorporated into

the contract. The deposit was, therefore, within, and covered by, the conditions of the bond.

The sureties, however, would be liable only for interest on the deposit at 2 per cent. per annum on monthly balances, as in the case of any other moneys deposited. It is hardly necessary to add that what the board of county commissioners could not authorize they could not ratify.

2. The Security Bank having become insolvent, the state bank superintendent on August 11, 1896, instituted insolvency proceedings against it, and upon his petition a receiver of all its property was appointed on the 13th of the same month, pursuant to the provisions of Laws 1895, c. 145, § 20, since which time the administration of its affairs and property has been carried on by the receiver pursuant to law, and under the direction of the court.

At the time the bank failed, it was indebted to the county, for funds deposited (including the certificate already referred to), in the sum of $49,509.20. In the insolvency proceedings, the court, by order duly made and published, limited the time for filing claims against the bank to February 10, 1897. The county never filed or presented its claim against the bank in the insolvency proceedings, or complied with the conditions necessary to enable it to share in the distribution of the assets of the insolvent bank. This omission was without the knowledge or consent of the sureties on the bond.

The receiver has already paid a dividend of 10 per cent. to those creditors who filed and proved their claims, and there is still in the hands of the receiver assets which, when converted into money, will assure them still further dividends. If the county had filed its claim in the insolvency proceedings, it would have eventually received, in the distribution of the assets of the bank, 40 per cent. of it. The county treasurer demanded payment from the bank on August 11, 1896, the day the bank failed.

Upon the authority of Siebert v. Quesnel, 65 Minn. 107, 67 N. W. 803, counsel for the defendants claim, and counsel for the plaintiff seems to concede, that, as between private persons, the failure of the obligee of the bond to file his claim against the estate of the insolvent principal within the time allowed for that purpose would release the sureties pro tanto. For the purposes of this case we

shall assume that this is so, although, in view of the general trend of the authorities, it is at least doubtful whether the mere passive omission of the creditor to file the claim would have any such effect, in the absence of any request by the sureties that it should be filed.    See Johnson v. President, 4 S. & M. 165; Bull v. Coe, 77 Cal. 54, 18 Pac. 808.

Counsel for the defendants urge that this is not a case of suretyship for a public officer, and that the obligation of the defendants does not in any manner relate to the performance of official duties due to the public, and hence that the case must be governed by the rules applicable to private bonds to secure the performance of duties due to private persons.    In this counsel are in error.    While the bank may not have been a "public officer," in the popular sense of that term, yet in the matter of the county money deposited with it, it was performing public duties, or duties to the public, and pro hac vice was a public officer.    Its duty was to the public, and its bond to secure the performance of that duty was for the benefit and protection of the public.

The case falls within all the reasons of the rule, founded on public policy, which makes certain distinctions between the rights and liabilities of sureties on private bonds and sureties on bonds given to secure the performance by public officers of their official duties to the public.    The case must be determined by the rules applicable to the latter.

It is familiar law that in taking a bond from a public officer to secure the performance of his official duties the state, or any municipal subdivision of it, does not contract with the sureties against the negligence or misfeasance of other public officials in the performance of their duties designed for the benefit and protection of the public, and hence that such negligence or misfeasance will not release the sureties, although the due performance of such duties might have prevented loss to the public caused by misfeasance of the principal on the bond, and thereby also prevented loss to the sureties.    One of the most common examples of the application of this rule is where some public officer or board, having a supervisory power over another officer, has failed to perform his or its duty by examining the books and vouchers of the principal obligor on the

bond, or by requiring him to make reports or settlements at stated periods, as required by law.    U. S. v. Kirkpatrick, 9 Wheat. 720; County of Waseca v. Sheehan, 42 Minn. 57, 43 N. W. 690.

This rule is founded upon a great public policy, and not upon the idea of any extraordinary prerogative on the part of the state. The controversy between counsel is whether the facts in this case bring it within this rule.    Comparatively few of the cases cited by the respective counsel are very much in point upon this precise question.

All but two of the authorities cited on behalf of the plaintiff are cases in which it was held that, in the absence of a statute imposing such a liability, counties and towns are not liable for injuries caused by the negligence of their officers or agents in failing to keep highways, bridges, court houses, etc., in a proper state of repair. Such cases are of no aid in deciding this case.    The other two cases referred to are U. S. v. Kirkpatrick, supra, and Com. v. Brice, 22 Pa. St. 211, which clearly fall within the rule.

In all the cases, except one, cited and relied on by counsel for the defendants, there was some affirmative lawful and authorized act binding upon the public, which was held to have released the sureties either in toto or pro tanto.    In several of them the state had by legislative act extended the time of payment by the principal obligor on the bond.    Of course there could be no question of the power of the legislature to grant the extension.    In other cases municipal officers having authority to do so had surrendered to the principal certain collateral securities held for the performance of the same duty or obligation as that secured by the bond, and taken in place of them other securities of less value, and it was held that the sureties were released to the extent of the difference in the value of the securities.    In one case the city (the obligee in the bond) had settled with the principal debtor, and released him from all liability.    It was, of course, held that the sureties were also released.    In some of these cases the question of the authority of the public officials or boards to do, and bind the public by, the affirmative act which was held to release the sureties, was not expressly decided, but this was assumed, and the cases all seem to proceed on that assumption.

The remaining case cited by defendants, and the only one which, in our opinion, at all tends to support their contention, is Hayden v. Agent, 1 Sandf. Ch. 195. In that case the state agent had obtained judgment against the debtor of the state, and levied upon sufficient of his personal property to satisfy it, but through the sheriff's indulgence and the state agent's negligence nothing was ever realized out of the property to apply on the execution. It was held that this satisfied the judgment as to subsequent incumbrances upon the debtor's real estate; that the consequences of the state agent's negligence, which would otherwise occasion loss to the junior incumbrancers, was to be borne by the state in the same manner as individuals would bear them under like circumstances.

In Board v. Otis, 62 N. Y. 88, this case is cited and distinguished, the court saying: "The agent of the prison represented the state, and had given security for the faithful performance of his duties. But as the authorized attorney of the state his acts bound the state;" thus seeming to construe the conduct of the state agent as constituting not mere negligent nonaction, but an affirmative act, which he had authority to perform, or, at least, which bound the state. The position of counsel for the defendants seems to be that the rule applies only to negligence or misfeasance of other public officers of a character which rendered possible, or contributed to, the default on the part of the principal obligor on the bond.

We have examined many cases in addition to those cited by counsel, and while it is true that the facts in the majority of them bring them within the class suggested, yet we have found no case which thus limits the rule; and we do not think that the reasons of public policy upon which the rule is founded will permit its being thus limited. The general rule as to all kinds of suretyship is that the mere passive failure of the creditor to proceed to collect the debt from the principal will not release the sureties. And it is the general rule as to suretyship on official bonds, given to secure the public, that the negligence or misfeasance of other public officials is not chargeable to the public.

In the present case the conduct of the board of county commissioners was at most merely the negligent omission to perform a

duty which they owed the public, and which, if performed, would have reduced the loss of the sureties.

Upon the findings it must be assumed that the sureties knew that their principal, the bank, had gone into insolvency, indebted to the county; that its assets were being administered by a receiver; that a time had been fixed within which claims had to be filed; that their ignorance that the county had not filed its claim was owing to their failure to make any effort to ascertain what the fact was; and that they never requested the board of county commissioners to file the claim, or to take any action to enable the county to participate in the distribution of the assets of the bank. They were certainly in as good a position to protect themselves as the county officials were to protect them. The indebtedness from the bank to the county had been due and payable from the very day that the bank failed.

The sureties could have paid the debt to the county, and themselves filed the claim against the bank; or, without paying the county, they could, by action or mandamus (at least by action) have compelled the county to file the claim against the bank. But, instead of this, they negligently remained inactive, neither paying their own indebtedness nor doing anything to protect themselves; and now, when it is sought to enforce the obligation of their bond, they seek to evade it by pleading the neglect of the county officials to do what they themselves might and ought to have done, viz., to take active measures to protect themselves. This is inequitable, as well as against public policy, and we do not think that the authorities support any such position.

Order affirmed.