MANCHESTER SAVINGS BANK v. EDWARD LYNCH, MARGARET LYNCH AND MARY FAGAN. MARY FAGAN, RESPONDENT.[1]

February 10, 1922.

No. 22,613.

No release of surety—failure to file claim against estate.

    The failure of the holder of a promissory note to present it to the probate court for allowance and payment out of the estate of a deceased maker, does not release a surety on the note. Siebert v. Quesnel, 65 Minn. 107, overruled.

Action in the district court for St. Louis county to recover $6,000 and interest on a promissory note. The case was tried before Fesler, J., who made findings and ordered judgment dismissing the action. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Reversed.

*Gearhart & d'Autremont*, for appellant.

*L. C. Harris*, for respondent.

[1]Reported in 186 N. W. 794.

LEES, C.

Plaintiff is the payee of a promissory note for $6,000, executed by the defendants and by Richard H. Fagan, who died before this action was begun. The only defendant who answered was Mary Fagan, the widow and sole heir of Richard H. Fagan. She admitted she executed the note; alleged she did so at plaintiff's request; received no consideration therefor and that the note was given for a loan from plaintiff to her husband and the defendant Edward Lynch. She alleged that on April 26, 1915, her husband died; that he was a resident of St. Louis county in this state; that he left an estate of over $75,000; that administration of his estate was duly had in the probate court of St. Louis county; that an order was made limiting the time within which creditors might file claims against the estate and due notice thereof given; that the time within which such claims might be presented expired in March, 1916; that plaintiff failed and neglected to present or file its note as a claim against her husband's estate, and that if it had been presented and allowed, there were ample funds in the estate to have paid it in full. These allegations were admitted to be true, were embodied in a stipulation of facts and were adopted as the findings of the trial court. The conclusions of law were that plaintiff was not entitled to recover from Mrs. Fagan. Judgment of dismissal was entered and plaintiff appealed from the judgment.

In deciding the case, the trial judge said:

"The issues here do not differ in principle from those involved in Siebert v. Quesnel, 65 Minn. 107 [67 N. W. 803, 60 Am. St. 441], and until that decision is modified or overruled a trial court should follow it."

The only question presented on this appeal is whether the Siebert case shall be followed or overruled. Soon after the case was decided, the late Justice Mitchell, who had participated in the decision, questioned the correctness of the rule announced. Board of Co. Commrs. of St. Louis County v. Security Bank of Duluth, 75 Minn. 174, 77 N. W. 815. It was not in harmony with Benedict v. Olson, 37 Minn. 431, 35 N. W. 10, where the statement was made that mere passive

delay on the part of a creditor in prosecuting his remedies did not operate to release a surety, who might have paid the debt, become subrogated to the creditor's rights, and proceeded against the principal or brought suit under the statute, section 7684, G. S. 1913. It can hardly be reconciled with Berryhill v. Peabody, 77 Minn. 59, 79 N. W. 651, or National Citizens Bank of Mankato v. Thro, 110 Minn. 169, 124 N. W. 965. Its doubtful authority was suggested in Miles v. National Surety Co. 149 Minn. 187, 182 N. W. 996. It is opposed by a great number of well considered cases in other jurisdictions and by the opinions voiced by the authors of treatises on the law of suretyship. Note to Davenport v. State Banking Co. 115 Am. St. 86; note to Yerxa v. Ruthruff, 25 L. R. A. (N. S.) 139, Ann. Cas. 1912D, 811; 21 R. C. L. 1039; 32 Cyc. 228; Brandt, Suretyship (3d ed) § 508; Daniel, Neg. Inst. (6th ed.) § 1326; 5 Minn. Law Rev. 485.

Counsel for defendant concedes that the great weight of authority is contrary to Siebert v. Quesnel, but in an able brief urges that the decision was founded on principles supported by reason and justice. We therefore examine the question anew. The decision proceeded on the theory that the failure of the creditor to present his claim for allowance against the estate of the deceased principal debtor, amounts to a voluntary release of the estate, and should have the same effect as a release by the creditor of property pledged for the payment of the debt. As to the payee in a note such as this, the undertaking of the surety is primary; he is absolutely bound to pay the debt. Section 6004, G. S. 1913; Hammel v. Beardsley, 31 Minn. 314, 17 N. W. 858; Rouse v. Wooten, 140 N. C. 557, 53 S. E. 430, 111 Am. St. 875, 6 Ann. Cas. 280; Northern State Bank v. Bellamy, 19 N. D. 509, 125 N. W. 888, 31 L. R. A. (N. S.) 149. His relation to the principal debtor is entirely different. As to him, he is a gratuitous volunteer having no material interest in the contract and is regarded with special favor by the courts whose duty it is to jealously guard his rights. City of Winona v. Jackson, 92 Minn. 453, 466, 100 N. W. 368; Standard S. & C. Co. v. National Surety Co. 134 Minn. 121, 127, 158 N. W. 802.

We are now dealing solely with the reciprocal rights and obligations of the creditor and the surety. Since the creditor has the un-

qualified right to compel the surety to pay the note, he is under no duty to enforce the obligation of the principal before calling on the surety for payment. Hence it is uniformly held that the mere failure of the creditor to bring an action against the principal in his lifetime, does not relieve the surety from his obligation. To have that effect, something more must appear. 3 Dunnell, Minn. Dig. § 9095.

It is held in some jurisdictions that, by requesting the creditor to sue the principal debtor, the surety may impose upon him the duty to do so, and his failure to comply with the request, to the subsequent injury of the surety, releases the latter. Huey v. Pinney, 5 Minn. 246 (310); Brandt, Suretyship § 262. This doctrine has not been adopted by this court for the reason that the statute (section 7684, G. S. 1913), has placed it within the power of the surety to bring action to compel the principal debtor to satisfy the debt. Huey v. Pinney, supra; Wendlandt v. Sohre, 37 Minn. 162, 33 N. W. 700; Metropolitan Milk Co. v. Minneapolis St. Ry. Co. 149 Minn. 181, 183 N. W. 830.

Should it be held that the death of the principal debtor so changes the situation that it becomes the duty of the creditor to proceed to collect the debt out of the estate, or is it still the duty of the surety to protect himself by paying the debt and presenting his claim against the estate to the probate court or by filing it as a contingent claim? It seems to us that the death of the principal does not essentially change the relation of the parties. The surety still continues to be absolutely bound to pay the debt. The creditor still has the right to compel him to pay it. The estate of a deceased debtor is not pledged for the payment of his debts. It remains as it was in his lifetime, property upon which his general creditors have no specific lien. The authorities are in agreement upon the proposition that a surety is discharged to the extent of the value of the security lost, where the creditor, without the surety's consent, affirmatively releases collateral security, but, where a loss occurs merely through the inactivity of the creditor, the rule is different. His mere inaction or passive negligence in failing to resort to the collateral, is not sufficient of itself to release the surety from his obli-

gation to pay the debt. Note to First Nat. Bank v. Kittle, Ann. Cas. 1912D, p. 115; 21 R. C. L. p. 1055, note 9; Otis v. Von Storch, 15 R. I. 41; Wasson v. Hodshire, 108 Ind. 26, 8 N. E. 621; Howe Mach. Co. v. Farrington, 82 N. Y. 121-130; Fuller v. Tomlinson Bros. 58 Iowa, 111, 12 N. W. 127; Hoover v. McCormick, 84 Wis. 215, 54 N. W. 505. Assuming then that the estate of a deceased debtor, or the right to file a claim against it, should be regarded as in the nature of collateral security for the payment of the debt, the rule as to the effect of passive negligence would still apply and the surety would not be released.

The rule is different where, in the care or management of collateral securities, the creditor has been negligent, and, as a result, the surety has been deprived of collaterals to which he might have had recourse by virtue of his right of subrogation upon paying the debt. Because of this right, duty rests on the principal to preserve the security for the benefit of the surety. Nelson v. Munch, 28 Minn. 314-322, 9 N. W. 863; Bandler v. Bradley, 110 Minn. 66, 124 N. W. 644. But this rule has not been extended so far as to charge the creditor with negligence for failing to present his claim for allowance against the estate of the deceased principal debtor. As already stated, the decisions with practical unanimity are quite to the contrary.

The conclusion reached in the Siebert case is out of harmony with settled principles of the law of suretyship. The desirability of having uniform rules by which to determine questions of commercial law has been emphasized by this court. National Bank of Commerce v. Chicago, B. & N. R. Co. 44 Minn. 224, 46 N. W. 342, 560, 9 L. R. A. 263, 20 Am. St. 566; Rosemond v. Graham, 54 Minn. 323, 56 N. W. 38, 40 Am. St. 336. This is an additional reason why the case should be overruled, and we should fall in line with the courts of other states. It is urged that the case was decided more than 25 years ago, ever since has been the law of this state, and that the doctrine of stare decisis should be given effect. If the case established a rule of property, there would be great force in the argument. It established no such rule. It merely conferred upon sure-

ties the right to make a defense, or took away from the creditor a remedy against the surety which he otherwise would have.

For these reasons we have concluded that Siebert v. Quesnel, supra, should be overruled. The result is that the judgment appealed from must be reversed.

It is so ordered.