FIRST MINNEAPOLIS TRUST COMPANY v. NICOLLET SYNDICATE, INC. AND ANOTHER.[1]

August 10, 1934.

No. 29,793.

[1]Reported in 256 N. W. 240.

*H. V. Mercer,* for appellants.

*Stinchfield, Mackall, Crounse, McNally & Moore* and *Donald A. Holmes,* for respondent.

HILTON, *Justice.*

Action to recover the balance due on certain bonds secured by real estate situate in Minneapolis, issued by defendant Nicollet Syndicate, Inc. and guaranteed by defendant Benjamin and one James Leck. The trial court made findings of fact and conclusions of law and ordered judgment in favor of plaintiff. Defendants appeal from an order denying their motion for new trial.

On April 1, 1920, one Fiske gave a ground lease to certain real estate located in Minneapolis to William C. Redlin for a term of 100 years. At the same time Fiske sold to Redlin the buildings on the property for $40,000. Thereafter Redlin assigned his interest in the property to defendant Nicollet Syndicate, Inc. On or about September 1, 1923, Fiske assigned, in trust, all his right, title, and interest in and to said real estate to Wells-Dickey Trust Company. April 15, 1924, the Nicollet Syndicate gave to the Wells-Dickey Trust Company a trust deed or mortgage upon the property as security for an issue of $60,000 first mortgage gold bonds. Subsequently, the First Minneapolis Trust Company, plaintiff here, by reason of consolidation with the Wells-Dickey Trust Company, became the successor trustee under both the Fiske trust and the Nicollet Syndicate trust deed.

Defendant Benjamin and Leck, both of whom were stockholders, officers, and directors of the defendant Nicollet Syndicate (the former its secretary-treasurer, the latter its president) guaranteed the payment of the bonds. The guaranty agreement, appearing on the back of each bond, was in the following language:

"Guaranty of Principal and Interest.

"For value received, the undersigned do hereby waive demand, protest and notice of non-payment and do jointly and severally guarantee the payment of both principal and interest of the within bond as and when such principal and/or interest matures, and the holder shall not be bound to exhaust his remedies against the maker of said bond before proceeding to recover payment under this agreement."

By that agreement Benjamin and Leck each assumed the obligations of a surety.

The bonds were made payable at various dates, the last 47 of which matured on April 15, 1931. On October 15, 1930, the Nicollet Syndicate had defaulted in the payment of interest due on the bonds and also in the payment of taxes and rental under the ground lease. Plaintiff, as trustee under the Nicollet Syndicate trust indenture, after giving the proper notice, accelerated the maturities of the bonds remaining unpaid as of January 2, 1931.

Defendant Benjamin contends that the contract he entered into was changed without his consent because of the acceleration of the bonds and that therefore he is released from all liability. He asserts that by his agreement he guaranteed payment of the bonds only upon the date designated in each and as specified in the trust deed; that he did not guarantee payment upon an earlier date. As will be noted from the agreement hereinbefore quoted, the sureties guaranteed payment of principal and/or interest of "the within bond." Each bond provided:

"If any default be made in the payment of the interest on this bond, or if any default be made in the payment of the principal or interest of any of the bonds herein mentioned, or if any default be made in any of the terms or conditions of the mortgage or trust deed hereinafter mentioned, and if any such default continue for a period of thirty (30) days, then and in any such event, the principal of this bond and of all such other bonds may become immediately due and payable in the manner and with the effect provided in said mortgage or deed of trust. * * *

310

"This bond is one of a series of eighty-three bonds of like tenor and date, numbered consecutively from 1 to 83, both inclusive, 46 of which said bonds are in the sum of $500.00 each, and 37 of said bonds being numbered 47 to 83 are in the sum of $1,000 each, which mature as shown by the mortgage or deed of trust hereinafter mentioned * * *."

The trust deed or mortgage provided that in event of default,

"The trustee may, and upon the written request of the holders of one-third (1/3) in amount of said bonds then outstanding the trustee shall, declare the principal of all of said bonds, issued and then outstanding, together with interest thereon then accrued, forthwith due and payable, and thereupon, and without notice to the mortgagor the same and all thereof shall become immediately due and payable, anything contained in said bonds, or herein, to the contrary, notwithstanding."

From the language of the bonds and the trust indenture, the only reasonable interpretation to be placed upon the agreement of the sureties is that they unconditionally promised to pay the bonds not only at the dates specifically stated, but also at such date as might be set by acceleration. Schlozer v. Heckeroth, 174 Minn. 525, 219 N. W. 921.

Benjamin's cosurety died testate in 1928. Proceedings to probate his estate were commenced in Hennepin county and are there pending. The time to file claims expired June 4, 1929. Plaintiff here did not file a claim against the estate within that time, nor did it make application for extension within the one year and six months period allowed by 2 Mason Minn. St. 1927, § 8811. On January 15, 1931, it did, on behalf of the bondholders, petition the probate court for such extension of time and for leave to file a claim against the estate. The claim was disallowed. On appeal to the district court the probate court was affirmed. An appeal was taken to this court, where the action of the lower courts was affirmed. State ex rel. First Minneapolis Tr. Co. v. Fosseen, 192 Minn. 108, 255 N. W. 816. In that case we held, against the contentions of the First Minneapolis Trust Company, that its claim on the guar-

anty of James Leck against his estate was not contingent upon default in the payment of interest or principal on the bonds; that the guaranty was a definite, unconditional contract to pay principal and interest; that there was nothing contingent or uncertain about the obligation; that it was a primary one; and that it could not be allowed after the time for filing claims had expired. In that case the question whether the probate court had power to allow a contingent claim which becomes absolute after the expiration of the time to file claims but before the estate is closed was not decided, nor are we called upon to answer that question here, or the question whether Benjamin's claim against the Leck estate is or is not a contingent one.

The contention of Benjamin is that he was released from at least half of his obligation because the plaintiff failed to file within proper time its claim in probate court against the Leck estate, thus depriving him of whatever right he might have had against that estate. This position is untenable. The obligation of each surety by the terms of their agreement was joint and several. Both could have been sued together, or either one could have been sued separately and made to pay the obligation in full without releasing the other. 2 Mason Minn. St. 1927, § 9411. In support of the view that the failure of plaintiff to file its claim against the estate of Leck did not release Benjamin, we need cite only Manchester Sav. Bank v. Lynch, 151 Minn. 349, 186 N. W. 794, 50 A. L. R. 1210; 6 Minn. L. Rev. 417. The decision therein contains a complete and thorough discussion of the question here involved, with citations of numerous authorities, both of this and other jurisdictions. That decision overruled Siebert v. Quesnel, 65 Minn. 107, 67 N. W. 803, 60 A. S. R. 441, and definitely settled the question against contentions such as are here made by defendant Benjamin.

■ In January, 1931, the First Minneapolis Trust Company, as trustee under the Fiske trust, canceled the ground lease and obtained possession of the property from the Lancaster Corporation, the then successor to the Syndicate's interest therein. See First Minneapolis Trust Co. v. Lancaster Corp. 185 Minn. 121, 240 N. W. 459. Defendants' position is that, because the First Minneapolis

Trust Company took possession of the property upon which the bonds were secured, the bonds must be considered, as to them, as having been paid. We see no merit to such a claim. The First Minneapolis Trust Company in canceling the ground lease, as it was authorized by the terms of the lease to do, was acting in its capacity of trustee for the Fiske estate. Its action here is on behalf of the bondholders, upon the unconditional promise of the defendants to pay the bonds. Defendant Nicollet Syndicate could have (and indeed it had covenanted so to do in its trust deed or mortgage given to secure the bonds) paid the taxes and the rent due under the lease and thereby prevented the forfeiture of the property and preserved the security thereof to the bondholders. Its failure to perform its obligation in that respect cannot possibly work to its benefit so as to relieve it from liability to pay the bonds. Defendant Benjamin's liability is not at all contingent upon anything that might or might not have been done under the ground lease; his is an absolute, unconditional obligation. But the Syndicate claims that it was released from its obligation to pay the rent under the lease for the reason that the First Minneapolis Trust Company, as trustee for the Fiske estate, had for a time accepted rent payments from subsequent lessees. We do not think the circumstances here warrant any such conclusion. What the Nicollet Syndicate's obligation may be under the ground lease is not here important, for it cannot escape the obligation undertaken by it in the trust indenture to pay "all taxes, assessments, liens and charges that may for any purpose, be lawfully assessed, charged or imposed upon the premises" and to "faithfully and completely perform and carry out each and every one of the covenants, promises and agreements in said lease contained * * * so that the security intended to be effected by this instrument will not, at any time, be endangered or imperiled by failure on the part of the mortgagor to comply with all the requirements of said lease."

This case was remarkably well briefed and argued orally by respective counsel. We have given careful consideration to all the points advanced and conclude that there were no reversible errors at the trial in the lower court and that its decision was correct.

Affirmed.