## JOHN JAMES v. W. B. JACQUES AND OTHERS.

The stipulation in a deed of trust that notice of sale under it shall be given for a specified time, is a stipulation in favor of the makers of the ·deed, for the purpose of securing a fair competition at the sale; and if, before a sale of the property under the deed of trust, it be levied upon by an exe·cution emanating from a judgment rendered subsequent to the making of the deed of trust, the purchaser at the execution sale becomes the owner of the property subject to the deed of trust, and is possessed of all the rights which the makers of the deed retained in the property at the time of the execution of the deed; and by virtue thereof is entitled, before a sale of the property under the deed of trust is made upon the notice stipu·lated therein, to redeem the property by payment of the debt secured by. the deed.

The parties to the deed of trust cannot defeat the right of such purchaser to redeem, by waiving the notice of sale required by the deed of trust and authorizing an immediate sale of the property without notice.

A *surety* upon the note secured by the deed of trust, who pays off the note to the creditor, becomes thereby substituted to all the creditor's rights under the trust deed; and is entitled to enforce the lien upon the property for his re-imbursement, but not in such manner as to affect the owner of the equity of redemption.

Where, for the purpose of securing a debt, the debtor and his wife as his surety convey by deed of trust community property and also property be·longing to the wife in her separate right, a purchaser at execution sale of the equity of redemption in the community property is not entitled to have the respective liens so adjusted as to subject the separate property of the wife alone or in the first instance to the satisfaction of the deed of trust, so as to exonerate the community property in whole or in part from the lien of the trust deed.

In such a case it is the right of the wife to have the community property first applied in satisfaction of the deed of trust; and all that the owner of the equity of redemption in the community property can claim is the ex·cess of the value of that property over the debt secured by the deed of trust.

APPEAL from Bexar. Tried below before the Hon. Thomas J. Devine.

The appellant, James, brought this suit to the Fall Term, 1858, of the Bexar District Court, against Catharine L. Jacques and W. B. Jacques her husband, for the recovery of certain lots in the city of San Antonio; and also against Laura L. Sheahan, widow of

John S. Sheahan, deceased, for the purpose of subjecting certain of her separate property to a deed of trust in exoneration of the lots sued for. Catharine Sheahan, an infant heir of John S. Sheahan, was also made a defendant.

The facts disclosed in the pleadings and evidence were, that, on the 15th of July, 1855, one James Belger brought suit by attachment against John S. Sheahan, and levied his writ of attachment on certain lots in San Antonio, community property of Sheahan and wife. At the Spring Term, 1856, there was judgment in favor of Belger, and on September 13th, 1856, his execution was levied upon the community lots of Sheahan and wife. On the first Tuesday in October, 1856, the lots were sold by the Sheriff under the execution, and James, the appellant, became the purchaser at the sum of $200.

On the 12th of July, 1855, three days before the commencement of the suit of Belger against Sheahan, the latter, with his wife, Laura L. Sheahan, Catharine L. Jacques and her husband, W. B. Jacques, as John S. Sheahan's securities, executed their notes to William Vance for $1000, borrowed money, and their deed of trust to James Vance as trustee as security for the debt. The note matured due on the 1st day of January, 1856, and the deed of trust provided for a sale of the property conveyed by it, at any time after the maturity of the debt, after notice by the trustee posted at the courthouse door for ten days previous to a sale. The property conveyed in the deed of trust consisted of the community lots of Sheahan and wife, and also of an adjoining parcel of ground belonging to Laura L. Sheahan, the wife of John S. Sheahan, in her separate right.

On the 13th of September, 1856, the same date as the levy on the lots of the Belger execution, the makers of the deed of trust by their written instrument consented that a sale of the property under the deed should be made on the 27th of September, 1856, without any notice of sale being given. On the sale day thus agreed upon, September 27th, 1856, Catharine L. Jacques, one of the makers as security of the note and deed of trust to Vance, obtained from William Vance, the creditor, a transfer of the note and trust deed to herself; and on the same day, in consequence of

21

the refusal of James Vance, the trustee, to sell, the makers of the deed of trust, with the consent of James Vance, substituted Justin McCarthy as trustee, and by written instrument requested and authorized him to proceed to sell at once and without notice of the sale, and directing him first to sell the lots now in controversy. At three o'clock in the afternoon of the same day, McCarthy made sale of the lots at the courthouse door, and Mrs. Catharine L. Jacques became the purchaser at the price of $750, whereon she satisfied the deed to Vance, and McCarthy made to her a deed for the lots. The separate property of Laura L. Sheahan, included in the deed of trust, was not offered for sale. On the same day of sale a written ratification of the sale by McCarthy to Mrs. Jacques was made by Sheahan and wife. In all these transactions relating to the making of the note and deed of trust, and to the sale and ratification thereof, Sheahan acted by his attorney in fact, I. A. Paschal.

The petition of the plaintiff, James, charged that the separate property of Laura L. Sheahan, included in the deed of trust, was liable as well as the community lots to sale under the deed, and was ample to have satisfied the debt secured by the deed; and that such separate property should have been first sold for that purpose, and the lots have been left to be sold under the Belger judgment; that the sale of the lots was therefore illegal and inequitable; that the transfer of the note by Vance to Mrs. Jacques, the substitution of McCarthy as trustee, and his sale of the lots to Mrs. Jacques, were illegal and fraudulent, and were done by the collusion of the parties for the purpose of defrauding Belger out of his rights in the lots acquired by his judgment and levy. The plaintiff prayed judgment and writ of possession for the lots, that McCarthy's deed of the lots to Catharine L. Jacques be delivered up and cancelled, and plaintiff's title be confirmed, and for general relief.

The instruction of the court below, which is referred to in the opinion, was as follows:—"If the representatives of Sheahan's estate do not complain of the failure to give the ten days notice, and the trust creditor's debt, was paid by the sale, no other party has a right to complain of any real or supposed want of notice."

The trial was had at the Spring Term, 1859, when there was

verdict and judgment for the defendants ; a new trial refused, and the plaintiff appealed.

*James Denison* and *R. A. Henson*, for appellant.

*I. A. & G. W. Paschal*, for appellees.

BELL, J.   We are of opinion that the case made by the pleadings and evidence was not sufficiently presented to the consideration of the jury by the instructions given them ; and, also, that the last instruction given to the jury was erroneous.   It is not enough to say that Belger is not a party to this suit, and that no one is entitled to complain that notice of the sale under the deed of trust was not given.   The stipulation in the trust deed that ten days notice of sale under it should be given, was a stipulation in favor of the makers of the deed, and was intended to secure a fair competition at the sale.   James, by virtue of his purchase at the Sheriff's sale, became the owner of the equity of redemption, and possessed the same rights that the makers of the trust deed retained at the time of its execution.   By his purchase, James became the owner of the property, subject to the lien of Vance growing out of the trust deed.   It cannot be doubted that if notice of the sale had been given, and James had attended the place of sale, he would have been entitled to redeem the property by paying the debt due to Vance; and the sale could not have proceeded in the face of an offer by James to redeem.   We are of opinion that Mrs. Jacques, by paying the debt to Vance, became substituted to all his rights as creditor under the trust deed, and was entitled to enforce the lien upon the lots for her re-imbursement, but not in such manner as to affect James' equity of redemption.

The true controversy here is between James and Mrs. Sheahan ; and we are of opinion that James cannot claim the right to have the respective liens so adjusted as to subject the lots which were community property to the Belger judgment, and the piece of land called the Rincon, which is Mrs. Sheahan's separate property, to the lien of the deed of trust, or to the payment of the debt to Vance.   Mrs Sheahan is shown to be a surety for her husband in

the note to Vance.   Her separate property is in no way liable to the judgment in favor of Belger.   It is true her separate property is liable to the debt of Vance, but only in connection with community property which ought first to be exhausted.   In this state of case, to adjust the liens of Vance and Belger in such way as to make the separate property of Mrs. Sheahan liable to the whole of the Vance debt, is to deprive her of a right, viz., to have the community property first made subject to that debt; and would be the same thing in the end as to make her separate property liable to the judgment of Belger.

All that James can claim is the excess of the value of the lots over the debt to Vance, and this much he can claim, because he has the equity of redemption.

The lots ought to have been sold by the trustee, or by some one properly substituted by him, or by the makers of the trust deed, with his consent, after the notice stipulated for in the deed, so that James might have had an opportunity to redeem.   That this may be done, the judgment is reversed and the cause remanded.

If it could be shown that the property was, at the time of the purchase by James, of greater value than the amount of the debt to Vance, and that by reason of the accumulation of interest on that debt, and the depreciation in value of the property, it was not now of value sufficient to pay the Vance debt, such facts might give rise to equities, or might affect the rights of parties; but we cannot discuss such possibilities at the present time.

Reversed and remanded.