PATTERSON et al. v. WALKER et al.†

(Court of Civil Appeals of Texas. Nov. 16, 1910. On Motion for Rehearing, Feb. 22, 1911. Rehearing Denied March 22, 1911.)

1. BILLS AND NOTES (§ 301*)—LIABILITY OF INDORSER—ACCRUAL OF ACTION.

Rev. St. 1895, art. 304, requiring the holder of a note, in order to fix the liability of indorsers, to cause it to be protested or to institute suit thereon at the first term of court, or at the second term if there is an excuse for not suing at the first term, requires suit to be brought when the principal debt has matured, and not at the time one or more installments of interest become due, so that where the notes provided that failure to pay interest when due should, at the holder's option, mature all the notes, the holder, by first exercising the option to consider the notes due for nonpayment of an installment of interest by suing on the notes the second term after the installment became due, did not release indorsers; the exercise of the option not relating back to the time when the interest fell due.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 706–721; Dec. Dig. § 301.*]

2. BILLS AND NOTES (§ 299*)—LIABILITY OF INDORSER.

Rev. St. 1895, art. 1257, providing that, where a suit is discontinued as to a principal obligor, judgment cannot be rendered against an indorser, jointly sued, unless it is alleged and proved that the "residence of the principal obligor is unknown and cannot be ascertained by the use of reasonable diligence," etc., requires plaintiff to allege and prove that such residence is unknown "to him," and cannot be ascertained by the use of reasonable diligence on his part.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 680–705; Dec. Dig. § 299.*]

On Motion for Rehearing.

3. CONTINUANCE (§ 6*)—DILIGENCE.

Where, in an action on notes against the indorsers in which defendant filed a cross-action against the maker and other indorsers, citation was served on the principal defendants in time to have permitted them by acting promptly thereafter to procure the publication of citation upon cross-defendants for four successive weeks before court met, thereby shortening the delay by six months which would have been necessary to make service by publication, had the trial been continued until the next term for that purpose, a continuance was properly denied, as defendant should have exercised diligence to make service before the court met.

[Ed. Note.—For other cases, see Continuance, Dec. Dig. § 6.*]

Appeal from District Court, Runnels County; John W. Goodwin, Judge.

Action by G. S. Walker, Jr., and others, against G. W. Crossland, in which J. H. and J. S. Patterson and others. were made defendants. From a judgment for plaintiffs, the last-named defendants appeal. Affirmed.

M. E. Smith, for appellants. Stone & Wade, for appellees.

KEY, C. J.. G. S. Walker, Jr., brought this suit against G. W. Crossland, as maker of three promissory notes, given for purchase money of certain real estate. O. C. Bright, J. A. Witcher, and J. H. and J. S. Patterson, who were indorsers on the notes, were made parties defendant, the plaintiff alleging in his petition that the residences of Crossland and Bright "are unknown, and have not been ascertained after the use of reasonable diligence." The suit was commenced on July 26, 1909, and on September 6, 1909, the defendants J. H. and J. S. Patterson filed their original answer, containing a general demurrer, general denial, and cross-action against Crossland, as maker, and Bright, as payee and indorser of the notes, and against Witcher as indorser also. It was alleged in the cross-action, and shown by the proof, that the notes sued on were executed by Crossland to Bright for purchase money of the land referred to in the plaintiff's petition, and were secured by an express lien retained on the land, and the Pattersons alleged that they were not primarily liable upon the notes, and asked to have the lien by which they were secured foreclosed, and took steps to procure service of citation by publication. Neither Crossland nor Bright filed any pleading in the case, and it is not made to appear that citation was served upon them. When the case was called for trial, the plaintiff dismissed his suit as against Crossland and Bright, and announced ready for trial as to the other defendants. Thereupon J. H. and J. S. Patterson sought to have the case continued, in order to perfect service upon their cross-action against Crossland and Bright. The motion for continuance is not set out in the transcript, but the bill of exception, after reciting other matters, reads as follows: "That said defendants Patterson asked the court to continue the case to the next regular term of said court for the purpose of perfecting service by publication on the said Bright and the said Crossland, and for the foreclosure of the lien against all of said parties, and having shown to the court that said defendants used due diligence to obtain service on the said Bright and the said Crossland by publication by having said citation duly published in the Banner-Leader, a weekly newspaper published in Runnels county, Tex., on or about the —— day of September, 1909, a copy of which citation was published as hereto attached, which citation contains a copy of plaintiff's petition, as well as defendant's said cross-action, and the court declined to continue said cause to perfect service on said parties, and forced the parties into trial, and the defendants therefore were compelled to go to trial upon their general denial as against the plaintiff. And to which ruling of the court said defendants J. H. and J. S. Patterson then and there duly excepted, and now reserve this their bill of exception No. 1, and ask that the same be embodied as part of the record in this case. Approved with the following qualifications:

(1) Plaintiff's suit was filed July 26, 1909, and defendants' answer and cross-bill was filed September 6, 1909, too late for service by publication to October term, 1909, of district court. (2) The court overruled defendants' motion to continue case, but did not compel them to go to trial on the general denial. The court made no limitation as to what defendants should go to trial on, but defendants, after the court overruled their motion to continue, stated to the court that they would only present a general denial, and, in fact, only read to the court their general denial. Jno. W. Goodwin, Judge Presiding." The motion to continue was overruled, and the court instructed the jury to find for the plaintiff against the defendants J. H. and J. S. Patterson and J. A. Witcher for the amount sued for, if they found from the testimony that the plaintiff, or his agents and attorneys, had exercised reasonable diligence and failed to ascertain the place of residence of Crossland and Bright, and that their residence was unknown to the plaintiff then and at the time he filed his suit. The jury returned a verdict in favor of the plaintiff, and the court rendered judgment thereon against Witcher and the Pattersons, and the latter have appealed: While some minor questions are presented, they are ruled on against appellants' contention, and only three questions will be discussed in this opinion.

1. Each note bore interest from date at the rate of 10 per cent. per annum, and contained a stipulation that "the failure to pay this note, or any installment of interest thereon when due, shall at the option of the holder of them, or any of them, mature all notes this day given by G. W. Crossland to O. C. Bright in part payment of said property. Interest payable annually." The notes were dated December 1, 1907, and were payable in two, three, and four years, respectively. The first installments of interest were due December 1, 1908. The plaintiff did not bring his suit to the next term of the court after those installments of interest fell due, but brought it to the second term, and counsel for appellants contends that, as the notes were not protested and no excuse offered by the plaintiffs for not suing at the first term, and appellants being liable only as indorsers, they are by force of article 304 of the Revised Statutes 1895 released from liability. It is not contended that the plaintiff exercised his option to declare the notes due until he brought his suit, but we are asked to hold that, when he did exercise that option, it related back to the time when the first installment of interest fell due. We are unable to concur in that proposition. The maturity of the installment of interest did not have the effect of maturing the entire indebtedness, but it created a contingency which authorized the plaintiff then, or at any subsequent time, to declare all the notes due. The notes not being due until that option was exercised, its exercise could not relate back and create the reverse of what actually existed; that is, make a debt due at a time when it was not due. There is more plausibility in the contention that appellants are at least released from any obligation to pay the first installments of interest. However, we have reached the conclusion that article 304 of the Revised Statutes, which requires the holder of any bill of exchange or promissory note, in order to fix and secure the liability of the drawer and indorser, to cause the same to be protested, or institute suit thereon at the first term of the court, or at the second term, with an excuse for not suing at the first, was not intended to require such steps to be taken until the principal debt has matured, although one or more installments of interest may become due. In De Cordova v. City of Galveston, 4 Tex. 470, our Supreme Court cited with apparent approval a Vermont case, in which it was held that limitation would not begin to run from the maturity of an installment of interest, but only from the maturity of the principal debt, and, if that be the rule as to limitation, we see no reason why it should not be applied by analogy to cases of this kind. Hence we hold that the suit was filed in time to fix appellants' liability.

2. It is provided by statute (article 1257): "Where a suit is discontinued as to a principal obligor no judgment can be rendered thereon against an indorser, guarantor, surety or drawer of an accepted bill who is jointly sued, unless it is alleged and proven that such principal obligor, resides beyond the limits of the state, or in such part of the same that he cannot be reached by the ordinary process of law, or that his residence is unknown and cannot be ascertained by the use of reasonable diligence, or that he is dead or actually or notoriously insolvent." It was under the latter part of this statute relating to unknown residence that the trial court proceeded in this case. Counsel for appellants present many objections to this branch of the case, some of which, if timely made in the trial court, would have been tenable. For instance, while the statute does not in terms so declare, it is obvious that it must be held to mean that the plaintiff shall allege and prove that the residence of the defendant as to whom he desires to dismiss is unknown to him, and cannot be ascertained by the use of reasonable diligence on his part. In this case the plaintiff merely alleged that the residences of the defendants Crossland and Bright "are unknown and have not been ascertained after the use of reasonable diligence." However, in the absence of any exception to that averment, it may be that the presumption should be indulged that it was intended to allege that such residences were unknown to the plain-

tiff. Still we deem it unnecessary to make any decisive ruling upon the point, as no doubt it will be eliminated at the next trial. And the same may be said as to the use of the language, "whose residences have not been ascertained," instead of the language of the statute, "whose residences cannot be ascertained."

3. The third and last question to be discussed relates to the action of the court in overruling appellants' motion for a continuance. It is provided by statute (article 1208): "Before a case is called for trial additional parties may, when they are necessary or proper parties to the suit, be brought in by proper process, either by the plaintiff or the defendant, upon such terms as the court may prescribe, but such parties shall not be brought in at such time or in such a manner as unreasonably to delay the trial of the case." It is also provided by article 1188 that "all parties to a suit may in vacation amend their pleadings * * * and make new parties and file such other pleas with the clerk of the court in which the suit is pending as they may desire." Appellants' cross-action set up a good cause of action against Crossland and Bright, and disclosed facts which were admitted in the plaintiff's petition, presenting strong equities in appellants' favor. In other words, it was made to appear that appellants' liability was that of surety, and that Crossland, the principal debtor, had executed a contract lien on certain real estate situated in another county to secure the payment of the debt. In equity, if not in law, appellants had the right to have that property subjected to the plaintiff's demand before requiring them to pay anything; and the cross-action showed that the legal title to the property remained in Bright, and for that reason he as well as Crossland was a proper party to the cross-action seeking to foreclose the lien. In other words, while from the plaintiff's standpoint Crossland and Bright may not have been necessary parties, yet, as to appellants' cross-action, they were necessary and proper parties to the suit. It is hardly necessary to cite authorities in support of the doctrine that a surety, and especially one not primarily bound for the debt, has the right to have the property and especially the mortgaged assets of the principal debtor exhausted before compelling the surety to pay anything. In this state that doctrine has been recognized and applied in James v. Jacques, 26 Tex. 320, 82 Am. Dec. 613; Schneider v. Sellers, 25 Tex. Civ. App. 226, 61 S. W. 541; Bruce v. Laing, 64 S. W. 1019. Indeed, legislation in this state has extended that doctrine so as to require the creditor to exercise diligence to collect the debt from the principal or suffer the loss of his security. R. S. arts. 304, 3811, 3812. And, although a defendant may be liable to the plaintiff as a principal, yet he may plead and prove that as to his codefendant he is a surety, and have the decree so framed as to exhaust the available property of the other defendant before resorting to that belonging to him. R. S. arts. 3813, 3814. The statutory provisions referred to were enacted for the benefit and protection of sureties, and they should be liberally construed and enforced in order to accomplish the legislative purpose.

It is suggested in appellee's brief that in refusing to grant the continuance the court exercised a sound discretion which should not be overruled by this court, and it is there said: "This observation becomes peculiarly pertinent in this case when appellants' unexplained delay in getting out their citation until just too late for that term of court justifies the suspicion that they were more interested in delay than in getting their judgment over against the fleeting maker of the notes." If the record sustained the charge that the appellants were guilty of unexplained delay in suing out citations and procuring service thereof, appellee's contention might be sustained. But the record does not show when appellants were served with citation notifying them of the plaintiff's suit, and the bill of exceptions states that they asked for a continuance for the purpose of perfecting service by publication, "and having shown to the court that said defendants used due diligence to obtain service on the said Bright and the said Crossland by publication by having said citation duly published in the Banner-Leader, a weekly newspaper published in Runnels county, Tex., on or about the —— day of September, 1909," etc. It is true that in approving the bill the trial judge stated as a qualification of his approval that the plaintiff's suit was filed July 26, 1909, and defendants' answer and cross-bill was filed September 6, 1909, too late for service by publication to the October term, 1909, of the district court. The date of the filing of the petition and the cross-bill had already been stated in a previous part of the bill, and are shown by other portions of the record, as is the fact that the cross-action was filed too late for service by publication at the October term of the court. Therefore it seems clear that the statement of those facts by the judge does not qualify or modify that portion of the bill wherein it is stated that it was shown to the court that appellants had used due diligence, and the same may be said as to what is stated by the judge in the second clause of his qualification of the bill. What is there stated has no bearing whatever upon the question of appellants' diligence in obtaining service upon their cross-action. As stated before, the motion to continue is not set out in the transcript, and it may be that it was made to appear therein that appellants were not served with citation until the day before they filed their cross-action; and, if such was the case, then the bill of exception spoke the

truth when it stated that it was shown to the court that appellants had used due diligence. Unless some such showing was made, it is to be presumed that the trial judge would not have approved the bill of exception with that statement in it without a qualification clearly showing that he did not intend to approve that part of the bill.

It appearing that appellants had used proper diligence to obtain service upon Crossland and Bright, who were proper parties to the suit, the only question remaining is, Would granting the motion have unreasonably delayed the trial of the case? And we think that question must be answered in the negative. The plaintiff's cause of action is one of debt, founded upon written obligations which bear 10 per cent. interest, the latter payable annually; and, without stopping to inquire whether or not the plaintiff will be entitled to interest upon past-due installments of interest, we content ourselves with the statement that the record fails to make it appear that the plaintiff would have suffered any pecuniary damage, or any serious personal inconvenience if the court had granted the motion to continue. On the other hand, it is the policy of the law to discourage a multiplicity of suits, and it can be readily seen that it would be much more expedient and less expensive to appellants to litigate the matters set up in their cross-action in this suit than to pay the debt and institute and maintain a separate suit in the county where the land is situated, and where appellants do not reside. Furthermore, appellants' right to have the mortgaged property first subjected to the payment of the debt is entitled to consideration in determining the question of reasonable delay. If, as they allege, their obligation is that of indorsers only, and the plaintiff has declined to foreclose the lien by which his debt is secured, and has elected to pursue the harsh remedy accorded him by law against a surety, a court exercising equitable powers should be willing to aid the surety in enforcing as speedily as possible the lien which the plaintiff has declined to enforce.

Hence we conclude that the trial court committed error when it overruled the motion for a continuance; and for that error the judgment will be reversed and the cause remanded for further trial.

Reversed and remanded.

### On Motion for Rehearing.

In our former opinion reversing and remanding this case it is stated that the record does not show when appellants were served with citation, and that such being the case, and the bill of exception to the action of the court in refusing to grant the continuance having stated that appellants had used due diligence by having citation duly published in September, 1909, there was a sufficient showing of diligence upon the part of appellants, and that they were entitled to a continuance in order to perfect service by publication, and thereby subject the mortgaged property to the payment of appellees' debt, before requiring appellants to pay any portion of it.

In appellees' motion for rehearing they have for the first time called our attention to the fact that in appellants' motion for a new trial in the court below it is stated that citation was served on one of them on the 28th day of July, 1909, and on the other on the 6th day of August, 1909. That admission was not mentioned in the brief of either party, and we overlooked it in our former consideration of the case. If prompt steps had been taken immediately after appellants had been served with citation, they could have secured the publication of citation upon Crossland and Bright for four successive weeks before the court met, and thereby shortened the delay by six months which would have been necessary to perfect service by publication upon their cross-action. Any considerable delay which appellants could have prevented by the exercise of reasonable diligence would constitute an unreasonable delay. Hence we conclude that the trial court did not err in overruling the application for a continuance. Inasmuch as no exceptions were urged against the plaintiffs' petition, we hold that it was sufficient to authorize the court to submit to the jury the issue that was submitted, and to support the judgment that was rendered.

The motion for rehearing is granted, the judgment of reversal formerly rendered by this court is set aside, and the judgment of the trial court is affirmed.

Motion granted and judgment affirmed.

