# BRAUGHT v. GRIFFITH AND McCLEARY.

1. SURETY: SUBROGATION. A surety who pays the debt upon which he is liable after the creditor has "stated, sworn to, and filed" the same as a claim against the estate of the principal debtor who has deceased, stands in the place of the creditor as to the steps already taken to enforce the claims against the estate, and is subrogated to his right to prosecute the same to an allowance, and to demand payment of the administrator in the class in which it was placed by the original filing.

2. EXECUTOR: FILING CLAIMS AGAINST AN ESTATE. The stating, verifying and filing of a claim against an estate, in the county court, is in the nature of a petition. When it is based on a written instrument it is sufficient to file a copy if the original is produced at the time of trial or when it is allowed. (*Baker v. Chittucks*, 4 G. Greene, 480.)

3. SAME: WITHDRAWING CLAIMS. When after filing a note as a claim against the estate, the creditor withdrew the original from the county judge's office for the purpose of sueing other parties thereon, and without intending to abandon the claim against the estate, and the county judge made the following memorandum on the papers to which the note was attached: "Nov. 28th, John Peck this day withdrew the note for $1,000 which was on file in this office—P. P. HENDERSON, County Judge," which was the only entry made showing the fact; it was held, that the withdrawal for the purpose indicated was not a withdrawal or abandonment of proceedings to establish the claim.

4. SAME: CONTINGENT CLAIMS. The filing of the claim by the creditor against the estate of the principal debtor obviates any necessity for filing the same as a contingent claim, under § 2397 of the Rev. of 1860.

5. PROCEEDINGS AFTER SUBROGATION. When sureties are subrogated to the rights of a creditor in a claim against the estate of the principal debtor filed by such creditor, they may proceed in the county court, upon a proper showing of the facts, and in their own name, to secure an allowance and payment of the demand, as of the class to which it belonged by reason of the original filing.

*Appeal from Warren District Court.*

WEDNESDAY, APRIL 13.

THIS cause originated in the County Court of Warren county, and was taken by appeal to the District Court of the same county where the order of the County Court was

affirmed. The agreed statement sets forth the facts of the case as concisely as may be, and is as follows, to wit:

"It is stipulated and agreed between the parties to this suit, and for the purposes of this action and for use herein only, that the facts are as follows, to wit: that the said Hockett died about the 17th day of November, 1856; that on the 1st day of December, 1856, letters of administration were granted on said estate to the above named defendants; that no record of any order of the court was ever made directing the manner in which the said administrators should publish a notice of their appointment, but the plaintiff had actual notice of their appointment, at the time, and on or about the 8th day of December, 1856, the said administrators did post up a notice of their appointment in three or more public places in Indianola and other places in said county, the said decedent having lived and died in Indianola; that on the 16th day of January, 1857, John Peck filed in the office of the county judge of said county, and swore to his claim against said estate, it being for two notes, one of which was in the words following:

" '$1,000.00. *Indianola, Iowa, Nov. 22d, 1853.*

" 'On or before the 25 of Dec. A. D. 1854, we promise to pay to John Peck, or order, the sum of one thousand dollars, for value received, with ten per cent per annum until paid.

> Z. H. HOCKETT,
> E. G. CROSTHWAIT,
> P. P. HENDERSON,
> MALON HAYWORTH,
> SAMUEL HAYWORTH,
> J. B. FREEL,
> DAVID DEMAREE.'

"And credited as follows, to wit:

" 'Received on the within note, one hundred and ninety dollars and sixteen cents, Dec'r 25th, 1854.'

" 'Rec'd Dec. 25th, 1855, on the within note, one hundred dollars.'

That afterwards, and on the 28th day of November, 1857, the said John Peck, without abandoning his claim against said estate, but with the intention not to release said estate from the payment of his said claim, went to the office of said County Judge, and took said notes, to wit: the one above mentioned, from the files of said court, for the purpose of sueing the other joint makers thereof, who it is agreed were but sureties for the said Hockett: and at the time of the said withdrawal of said notes, the then County Judge made the following memorandum on the paper to which said note had been attached, to wit: "Nov. 28th, 1857, John Peck withdrew the note for one thousand dollars, which was on file in this office. P. P. HENDERSON, Co. Judge;" that shortly after the withdrawal of said note, suit was brought thereon by the said John Peck, against all the makers of said note, except Z. H. Hockett, in the District Court of Warren county, Iowa; which suit was taken by change of venue to Madison county, where judgment was rendered against said makers, sureties as aforesaid, in the fall of 1860, and the said judgment was then paid by the said sureties; and the plaintiff in this action or proceeding together with the other sureties, makers as aforesaid, severally, on the 29th day of September, 1860, filed their claims against the estate of the said Hockett, for the respective amounts so paid by them on said judgment; the amount paid by the plaintiff herein being $245.16; and on the 2d of October, 1860, the matters having been heard by agreement of parties, the said claim was allowed by the county court and so marked at the time; that there are several claims against said estate on file in the office of the county judge, and marked as filed within six months after the 8th of December, 1856, and such claims amount to sufficient to more than exhaust the entire estate; that no

claim against said estate was allowed by the administrator or so marked, until after the allowance of the plaintiff's claim by order of Court as aforesaid, nor until the 22d day of January, 1861; that on the 23d day of January, 1861, the allowance of the said other claims on file as aforesaid, was approved by the County Court, and so marked; that none of the claims against said estate have been paid by the said administrators, but they have the whole of said estate to be appropriated for the payment of debts still in their hands.

C. C. COLE, Att'y for Pl'ff.<br>
H. W. MAXWELL, Att'y for Def't."

It will be seen by the above that the plaintiff's claim was allowed by the County Court, on the 2d day of October, 1860.

No exceptions were taken to this action of the County Court, and no appeal prosecuted from it. On the 9th of September, 1862, the defendants were notified that the plaintiff would apply to the County Court for an order directing them to pay the plaintiff's said claim "as a six months' claim, that is, as a claim of the *third* class."

In the County Court this application was heard, upon the agreed statement of facts above set forth. The Court, at the October term, 1862, granted the application and ordered the defendants " to pay the plaintiff's claim (which was allowed by the court, October 2d, 1860, for $245.16), as other *third* class claims against the estate."

The District Court having affirmed this order the defendants now appeal to this court.

*H. W. Maxwell* for the appellant, cited *Barber* v. *Chittucks et al.*, 4 G. Greene, 480 ; *Allen* v. *Van*, 1 Iowa, 568 ; *Burlington and Missouri River Railroad Company* v. *Sater*, Id., 421 ; *Chandler* v. *Hockett's Adm.*, 12 Iowa, 269.

*C. C. Cole* for the appellee, cited *Hart* v. *Jewett*, 11 Iowa, 276; *Chandler* v. *Hockett's Adm.*, 12 Id., 269; Story's Eq. Jur., §§ 327, 499–499 *d*, 502 and note, and 637; *Cheesebrough* v. *Millard*, 1 John. Ch., 409; *King* v. *Baldwin*, 2 Id., 554; *Hays* v. *Ward*, 4 Id., 123; *Commercial Bank* v. *The Western Reserve Bank*, 11 Ohio, 444; *Murray* v. *Catlett*, 4 G. Greene, 108; Bouvier's Law Dict., "Substitution."

DILLON, J.—I. The claim of Peck having been duly "stated, sworn to and filed," as the statute requires (Rev. § 2393), within six months, would have ranked, if established, as a claim of the third class.

And if established, it is plain, both on principle and authority, that the surety on paying the debt would have a right to stand in the place of the creditor.

Thus, it is held that where the creditor has proved the debt against the estate of the principal, and the surety afterwards pays the creditor the debt, the creditor will be considered a trustee of the dividends for the surety. *Ex parte Rushworth*, 10 Ves., 409; *Wright* v. *Morley*, 11 Id., 12.
. But Peck never obtained an allowance of his claim in the County Court, and the appellants insist that he even withdrew the same. In one respect this is a most material inquiry; and we have occasion exceedingly to regret the embarrassment arising from the uncertainty and vagueness of the agreed statement of facts in this regard.

The stating, verifying and filing of the claim in the County Court, stand for or are in the nature of a petition.

There is no express provision of the statute requiring a creditor, whose demand is based upon a written instrument, to file the original when he files his claim. He may, as if proceeding in the District Court, file a copy and it will be sufficient if the original is produced and filed on the trial, or at the time the claim is allowed. *Baker* v. *Chittucks*, 4 G. Greene, 480.

In the present case the creditor chose to file the original note, and he verified his claim in due form within a few weeks after the administrators gave notice of their appointment. By these acts he instituted proceedings to establish his claim. And now the inquiry is, "did he abandon or withdraw these proceedings?" The agreed statement in this respect is in this wise: "That on the 28th day of November, 1857, the said John Peck, *without abandoning* his claims against said estate, but with the intention not to release said estate from the payment of his said claims, went to the office of the said county judge and took the note from the files for the purpose of sueing the other joint makers thereof, who it is conceded were but sureties for the said Hockett, and, at the time of the said withdrawal of said note, the county judge made the following *memorandum* on the paper to which the note had been attached, to wit:

"November 28th, 1857. Jno. Peck this day withdrew the note for $1000 which was on file in this office. P. P. HENDERSON, County Judge."

If what he *did* amounted to a dismissal of his proceeding in the County Court, it would not be material what his intention, uttered or unexpressed, might have been. But it will be observed there is no *record* of the County Court or judge which dismisses or discontinues the proceeding. The indorsement on the paper by the county judge was, as we are inclined to think, a mere private memorandum to enable him to recollect, or his successor to know, that the note had been taken from the files. Withdrawing the note for the special purpose indicated, was not equivalent to a withdrawal or abandonment of the proceedings to establish it.

Because, then, first, there is no record of any dismissal of Peck's proceedings; because, second, it is possible to withdraw the note without discontinuing the proceedings, and because, third, and chiefly, the agreed statement positively declares, as an ultimate fact, that he withdrew the

note "*without abandoning his claim against the estate,* · but with the intention not to release said estate," we conclude that he did not dismiss or abandon his proceedings against the estate. Peck then having filed his claim within six months, and not having abandoned it, it would be entitled to rank in the third class, though not proved up till long after. *Hart* v. *Jewett*, 11 Iowa, 276; *Chandler* v. *Hockett's Admr.*, 12 Id., 269.

And now the question is, the sureties having been compelled to pay the Peck claim, are *they* entitled to the same rights against the estate which Peck would have had? Upon the authorities, and especially upon the American authorities, it seems to us that no question is more reasonably or more definitively settled. The late lamented HORACE BINNEY WALLACE, in his note to the leading case of *Dering* v. *Earl of Winchelsea* (1 L. C. in Eq., 106), thus clearly and correctly states the general doctrine: "As soon as the surety has paid the debt, an equity arises in his favor, to have all the securities, original and collateral, which the creditor held against the person or property of the principal debtor, transferred to him, and to avail himself of them as fully as the creditor could have done; for the purpose of obtaining indemnity from the principal, he is considered as at once subrogated to all the *rights*, *remedies* and *securities* of the creditor; as substituted in the place of the creditor, and entitled to enforce all his liens, priorities and means of payment as against the principal, and to have the benefit of securities that were given without his knowledge."

Many, but by no means all, of the cases are collected in the note referred to, and we need not cite them at large. We refer especially to *Watts* v. *Kinney*, 3 Leigh, 272, 294, and the masterly reasoning of TUCKER, P.; to *Lidderdale* v. *Robinson*, 2 Brock., 160, decided by C. J. MARSHALL; *S. C.*, 12 Wheat., 594; to *Shultz* v. *Carter*, 1 Speers' Eq., 534,

and *Eddy* v. *Traver*, 6 Paige, 521, as covering the case at bar in all of its essential features.

The same general principle has been more than once recognized in this court. *Murray* v. *Catlett*, 4 G. Greene, 108; *Wilkinson* v. *Daniels*, 1 Id., 179.

The right of the surety to subrogation seems to have especial force in cases where, like the present, the principal debtor is deceased. Thus it has been held that the payee is not bound to proceed in the Probate Court; that he may neglect to present his claim until barred against the estate of the principal debtor, and may afterwards proceed against the surety, who, it has been holden, will not be discharged by the creditor's neglect to present his claim, and who, having paid the note, may then recover of the executor, though the statutory time has elapsed in which suit could have been maintained on the note itself. *Sibley* v. *McAllister*, 8 N. H., 389.

In Iowa, both under the Code of 1851 (§ 1681), and the Revision (§ 2764), the creditor may, even after the decease of the principal debtor, proceed directly and alone against the sureties or any one of them. If he thus elects to pursue the sureties, their chief protection, in many cases, must consist in the maintenance, in their favor, of the right of substitution in its unimpaired vigor.

II. It is claimed by the appellants, in the next place, that the order appealed from, was erroneous, because the appellees failed to comply with § 2397 of the Revision, which is as follows:

"Contingent liabilities must also be presented and proved, or the court or executor shall be under no obligation to make any provision for satisfying them when they may afterwards accrue."

In this case, Peck did not commence suit against the sureties until more than six months had elapsed. The action seems to have been litigated, and thereby delayed.

Until a trial, the sureties may not have known that they were liable, and until payment, they had no absolute claim to file against the estate. Under these circumstances if the law be (which we do not find it necessary to determine), that because the sureties did not file their claim in six months, they are deemed guilty of laches, and postponed or barred, it would seem to be a very harsh doctrine especially as applied to sureties. In Missouri, a statute of limitations provided that all claims not prosecuted against an estate in three years, should be forever barred. It was held in favor of a surety who paid a debt after the lapse of three years, that the "statutory provision was not designed to work the gross injustice of barring demands accruing after the expiration of the three years." And it was further held, that the surety might, in such a case, maintain a bill to be subrogated to the rights of the creditor whose debts he had paid, and to enjoin the distribution of assets under the order of the Probate Court. *Miller* v. *Woodward et al., Admrs.,* 8 Mo., 169. See also *Sibley* v. *McAllister, supra.*

But it may be claimed that the section of the Code above quoted in relation to contingent liabilities, applies to and will enable sureties to protect themselves. Whether this section embraces sureties we need not determine, because we hold that if it does, the failure of the appellees to comply with its provisions, does not, under the circumstances, prejudice them. The leading object of this and other similar provisions is to enable estates to be closed up as speedily as may be, and to this end the court and executor should have notice of all the claims. In this instance they had notice. The creditor (Peck) placed the claim on file and as above held, the sureties, when compelled to pay, stood in Peck's shoes and were clothed with all his rights.

III. We understand the appellants furthermore to insist, that when the sureties paid the Peck claim, they should, in

order to be entitled to be substituted to his rights, have pro-
ceeded on the *original note* and had *it* established.

This was not necessary, although by an order of. Court
they might perhaps have had a right to use Peck's name,
resume his proceeding, and prosecute it. *Douglass* v. *Car-
lisle*, 12 Ohio, 169; but see *United States* v. *Preston*, 4
Wash. C. C. R., 446. Having been paid, Peck was entitled
to no judgment in his own right, but the sureties who paid
him were thus entitled. When the order appealed from
was heard, the defendants could have made any defense
which they could have made to having Peck's claim estab-
lished as a third class claim. Without further elaboration,
we conclude, that the sureties need not proceed on the
original note, but that they may have the same relief by
any appropriate proceeding which shows the *facts*, entitling
them to it; for courts, in applying and enforcing the doctrine
of substitution "look not to the form, but to the essence of
the transaction." *Enders* v. *Brune*, 4 Rand., 438; *Hickman*
v. *Hall's Admr.*, 5 Litt., 338; *Dias* v. *Bonchard*, 3 Edw.,
485; *The United States* v. *Preston*, *supra*.

No question has been made, if indeed it is open to ques-
tion, as to the power and authority of the County Court to
make an order accomplishing a result which is usually
effected through the medium of a bill of chancery. This
point has not been taken or argued, and has not therefore
been considered. We only remark that while it is true
that the doctrine of subrogation originated in equity, or
rather was first borrowed by that court from the civil law,
it is now recognized to a great extent as a legal right.
Willard's Eq., 113; *Mathews* v. *Aikin*, 1 Com., 595; *Nor-
ton* v. *Coons*, 3 Denio, 130.

And the rights of the parties to this controversy having
been submitted to the County Court, and also to the District
Court, upon an agreed statement, those courts might, and
indeed ought to pass upon those rights, being guided by

the general principles of law applicable thereto. The case of *Mahlon Haworth* v. *The same defendants*, and involving the same facts as the present one, is decided in the same way, and they are both

Affirmed.

COLE, J., having been of counsel, took no part in the determination of this cause.