BOCKHOLT v. KRAFT *et al.*

**Homesteads: MORTGAGE OF: SALE OF TO SAVE PROPERTY OF SURETY FOR MORTGAGE DEBT.** A husband owned eighty acres of land, and his wife owned eighty acres adjoining. The homestead was on the husband's eighty. The husband was indebted to the plaintiff, and he gave her his note for the amount, and the wife signed the same as surety, and they both joined in a mortgage securing the note, and conveying both eighties. Afterwards plaintiff released from the mortgage the wife's land, which was of greater value than the debt, and sought to foreclose the mortgage against the husband's land alone, including the homestead. *Held* that,

since the mortgage, as given, covered enough of property, not including the homestead, to satisfy the debt, the homestead could not, under Code, section 1993, be sold to satisfy any part of it,—not even to protect the wife as surety. In other words, the provision of section 1993, that, even when the homestead is pledged for a debt, it can be sold only "to supply the deficiency remaining after exhausting the other property pledged for the payment of the debt in the same written contract," takes precedence of the other rule, that a surety has a right to have the property of the principal exhausted before his own is sold for the payment of the secured debt. [ROBINSON, J., *dissenting.*]

*Appeal from Buchanan District Court.*—HON. JOHN J. NEY, Judge.

FILED, OCTOBER 26, 1889.

ACTION in chancery to foreclose a mortgage. There was a judgment for the debt secured, and a decree foreclosing the mortgage as to a part of the land covered thereby. Plaintiff and defendant Antoinette Kraft appeal.

*Hasner & McKee,* for appellant Johanna Bockholt.

*C. E. Ransier,* for appellant Antoinette Kraft.

*Boies, Husted & Boies,* for appellee William Kraft.

BECK, J.—I. The facts which are not disputed, or are established by preponderance of the evidence, are these: The defendants are husband and wife. The father of the husband gave him eighty acres of land, and the wife's father gave her an equal amount adjoining the husband's land. There was but little improvement on either tract. A house of little value was upon the husband's land, which he and his wife occupied until he built a better one on the same tract of land, costing six hundred dollars or eight hundred dollars, with money which he borrowed from the wife's father. He borrowed other sums from his father-in-law, which were expended in improving both his own land and his wife's land,

and in paying the wages of his hands employed on his farm, consisting of both his wife's land and his own. After the death of his wife's father, who bequeathed to plaintiff the claim upon the husband, he, with his wife, executed to her a new note for his indebtedness to the estate, and a small amount to her for money loaned to him. They also joined in a mortgage to secure these notes, conveying the land of each. Subsequently the plaintiff released from the lien of the mortgage the land of the wife, and now prosecutes this suit to foreclose the mortgage upon the husband's land alone. He insists that all the property covered by the mortgage, other than the homestead, must be first exhausted before the homestead can be sold, and that, as plaintiff has released the wife's land, the value whereof is greater than the debt, she cannot subject the homestead to the payment of any part thereof. The decree of the court below is to this effect. The plaintiff and her daughter, defendant's wife, insist that the wife is to be regarded as a surety for the husband, and it was therefore competent for plaintiff, without prejudice of her right, to subject all of the husband's land to her claim, to release her daughter's land, and to look alone to the security of the mortgage upon the husband's land.

II. Code, section 1988, provides that, "where there is no special declaration of the statute to the contrary, the homestead of every family, whether owned by the husband or wife, is exempt from judicial sale." Section 1993 declares that the homestead may be sold for debts under these conditions: "The homestead may be sold for debts created by written contract executed by the persons having the power to convey, and expressly stipulating that the homestead is liable therefor; but it shall not, in such case, be sold, except to supply the deficiency remaining after exhausting the other property pledged for the payment of the debt in the same written contract." Under this statute the homestead must remain exempt until all other property is exhausted which is pledged for the debt in the same

written contract. The creditor who takes the security on the homestead, and a surety who gives a lien on his own property, does so in view of this provision, which enters into the contract. The creditor takes security on the homestead, and upon other property owned by a surety, which is intended to be only security for the debtor; but the plain language of the statute declares that such property shall be exhausted before the homestead is sold. The debtor, by entering into the contract, assents to the provision of the statute, and the surety does the like, when he unites in putting a lien upon his property. They both assent to the exemption of the homestead, and that all other property covered by the security shall be sold before the homestead can be made subject to the debt. They cannot complain that the provision of their contract created by the statute is sustained. The statute giving protection to sureties we have not overlooked. It is to be construed in view of the homestead statute we have cited, and is not to be applied so as to require homesteads to be sold before all other property is exhausted, in violation of that statute. By such a construction, both statutes stand and are operative. The plaintiff in this case, by voluntarily releasing a part of the land mortgaged, cannot defeat the beneficent purpose of the statute to secure a home to the family, and cause the home to be sold, which the statute declares shall be exempt. These rules prevail in all cases of sureties for homestead owners. In the case of the wife who becomes the surety for her husband, there are persuasive equities which require her to stand by the contract which the law made for her. She ought not to be a party to an attempt to rob her husband and her family of their home. Her duty to her family demands that she should preserve their home, rather than her individual property. Besides all this, she herself is interested in the home; and it may be presumed that her interests would be better protected by preserving to her and her family a homestead, rather than other lands owned by her of equal value. These considerations lead us to

the conclusion that the husband and his family ought to hold his homestead exempt from plaintiff's claim. The decree of the district court is	AFFIRMED.

ROBINSON, J. (*dissenting*).—In the absence of a contract, the property of the wife would not have been liable for the debt in suit. Code, sec. 2212. A wife who mortgages her separate property for the debt of her husband is a surety, and is entitled to all the rights, legal and equitable, which are incident to that relation. *Agnew v. Merritt*, 10 Minn. 312 (Gil. 242); *Spear v. Ward*, 20 Cal. 673; *Neimcewicz v. Gahn*, 3 Paige, 640; *Bank v. Burns*, 46 N. Y. 174; *Hodgson v. Hodgson*, 2 Keen, 704; *Wheelwright v. Ie Peyster*, 4 Edw. Ch. 239; *James v. Jacques*, 26 Tex. 320; *McFillin v. Hoffman*, 42 N. J. Eq. 145, 7 Atl. Rep. 665. Sections 3039, 3041, 3042, of the Code, are as follows : "(3039) When a judgment is against a principal and his surety, the officer having the collection thereof shall exhaust the property of the principal before proceeding to sell that of the surety." "( 3041) After exhausting the property of the principal, the officer shall subject the property of the other parties in the order of their liability in the execution; but the party subsequently liable shall, if requested by the officer, show property of the party liable before him, so as to entitle himself to the benefit of this provision. (3042) But all the parties will be considered as equally liable in all cases, unless the order of liability is shown to the court, and recited in the judgment; and the clerk issuing execution on the judgment containing such recital shall state the order of liability in the execution." It is evident that there is a conflict between some of the provisions of these sections and section 1993, set out in the opinion of the majority, when applied to a case of this kind, if a liberal construction of all be adopted. An exception must be held to exist by implication, and in determining that exception it is the duty of the court to adopt that construction of the provisions in question which harmonizes best with

the settled principles of law, and which will, as a general rule, operate equitably. It' has been said that "a rule never to be lost 'sight of in determining the liability of a surety or guarantor is that he is a favorite of the law, and has a right to stand upon the strict terms of his obligation, when such terms are ascertained. This is a rule universally recognized by the courts, and is applicable to every variety of circumstances." Brandt, Sur., sec. 79. When a surety pays the debt of his principal, he is subrogated, by operation of law, to all the rights of the creditor against the principal, and also to other rights which the creditor may have held with respect to the debt so paid. *City of Keokuk v. Love,* 31 Iowa, 123; *Braught v. Griffith,* 16 Iowa, 26; *Sears v. Laforce,* 17 Iowa, 473. See, also, *Johnston v. Belden,* 49 Iowa, 301; *Searing v. Berry,* 58 Iowa, 23; 1 Jones, Mortg., secs. 874, 876; Brandt, Sur., secs. 260, 264, 275; Baylies, Sur. 356; Sheld. Subr., sec. 1. In *Braught v. Griffith, supra,* the following language was approved: "As soon as the surety has paid the debt an equity arises in his favor to have all the securities, original and collateral, which the creditor held against the person or property of the principal debtor, transferred to him, and to avail himself of them as fully as the creditor could have done. For the purpose of obtaining indemnity from the principal, he is considered as at once subrogated to all the rights, remedies, and securities of the creditor, as substituted in the place of the creditor, and entitled to enforce all his liens, priorities and means of payment as against the principal, and to have the benefit of securities that were given without his knowledge."

The ordinary contract of suretyship includes the right of the surety to insist that the property of his principal subject to execution be exhausted before his own property is taken, and, in case he pays the debt, that he be subrogated to all the rights of the creditor, and permitted, so far as is practicable, to indemnify himself by means of the securities held by the creditor. The construction adopted by the majority does not defeat the right of subrogation, unless an exception to

the general rule be created in favor of the homestead; for the surety who does not mortgage his property, but who pays the debt, would be entitled to enforce the securities held by the creditors to the same extent he could have enforced them. But the law does not favor a multiplicity of suits, nor a circuity of action; hence, if the homestead of the principal can be appropriated to indemnify the surety, he should be permitted to insist that it be sold before his own property is offered for sale  If the contract provided in express terms that the homestead should be sold before the property mortgaged by the surety could be appropriated for the payment of the debt, probably its validity would not be questioned; and yet it would be contrary to section 1993, if literally construed. The property of the surety would be ".pledged for the payment of the debt in the same written contract." In my opinion, section 1993 was not designed to effect the relative rights of principal and surety, but those of debtor and creditor; that the right of parties to a contract of payment to fix the order in which the mortgaged property shall be sold to pay the debt is unimpaired, and that the agreement of parties, whether expressed in words or implied by law, should be respected and enforced. As between the right of the debtor, who has voluntarily pledged his homestead for the payment of his debt, to hold it as against his surety, and the right of the surety to have it appropriated to repay the money he has paid for his principal, the equities, it seems to me, are with the surety. In the absence of a showing to the contrary, the parties should be presumed to have contracted with reference to the known duties of the principal and rights of the surety.

Something is said in the opinion of the majority as to the duties of the wife in the case. She insists that the homestead be sold before her separate property is taken. Whether she is justified in so doing, in any other than a legal sense, the record does not show; no inquiry as to that having been made in the court below. It is clearly shown that she is a surety only. The husband used but a small part of the borrowed money, if

any, in improving her land. He claims to have broken a few acres of it, to have built four or five hundred rods of wire fence on it, and to have paid some taxes; but it appears that he used it as his own for six or seven years, accounting for rent for but one year of that time, and that he pastured cattle upon it, and sold a considerable amount of wood from it, without accounting for the proceeds. The plaintiff gave as a reason for releasing the wife's land that the husband was "running through with everything." It also appears that he permitted judgments to be rendered against his wife for household expenses, which she paid, and that plaintiff paid some money for her on a store bill. In view of these facts, and in the absence of evidence to show the circumstances of the parties, and their relations in other respects, I do not think it should be found that the wife is not justified in her course, nor that the decision should rest to any extent upon such a finding. In my opinion, the husband was not prejudiced by the release of his wife's land from the mortgage. The decree of the district court should be reversed and the homestead subjected to the payment of the plaintiff's claim after the remainder of his mortgaged land is exhausted.