LINGENFELTER BROTHERS and OTHERS, Appellants v. GEORGE W. BOWMAN and SARAH A. BOWMAN, and GEORGE W. BOWMAN and SARAH A. BOWMAN v. LINGENFELTER BROTHERS and OTHERS, Appellants.

**Suretyship:** HUSBAND AND WIFE. By joining with her husband in a mortgage of the homestead as additional security for notes of the husband signed by the wife simply as surety, and from which she derived no benefit, she stands merely in the position of surety and is entitled to protection as such.

**Same:** FRAUD OF PRINCIPAL. One dealing with a surety must exercise the utmost good faith at every step of the transaction; he can do nothing to deceive or mislead the surety without vitiating the agreement. In this case the creditor induced the wife to mortgage their homestead as additional security for the husband's debt by false representations knowingly made, that the property already mortgaged to secure the debt was ample secur-

ity, and that the homestead would not be called upon to bear any part of the burden. *Held,* that the transaction was void for fraud.

**Attorney and client:** AUTHORITY OF ATTORNEY: RATIFICATION. An attorney has statutory authority to bind his client in respect to any proceeding within the scope of his proper duties and powers; but this does not authorize him, under a mere general employment to bring and prosecute an action, to enter into a stipulation of settlement of all matters involved in the suit and to dismiss the same, thus deprivng his client of a just cause of action; this can only be done by special authority. And there could be no ratification of the attorney's act by the client without a knowledge of the terms and effect of the stipulation.

**Mortgages:** SATISFACTION AND DISCHARGE. Where a mortgage was given as additional security to a bank from which the mortgagee had borrowed money for the benefit of the mortgagor, and not as additional security to the mortgagee, it was of no validity in the hands of the mortgagee after he had paid the debt to the bank and the notes held by it were returned to him.

*Appeal from Clarke District Court.*—HON. THOMAS L. MAXWELL, Judge.

WEDNESDAY, OCTOBER 16, 1912.

THE facts are stated in the opinion.—*Affirmed.*

*H. R. Vasey,* and *Blake & Blake,* for appellants.

*O. M. Slaymaker,* and *V. R. McGinnis,* for appellees.

SHERWIN, J.—George W. Bowman and Sarah A. Bowman are husband and wife, who were living at the time of the transaction involved herein in Clarke county. George W. Bowman became interested in a stock of goods in Indianola, upon which he gave a chattel mortgage for $5,700 to one Cottingham. He afterwards traded this stock of goods to Lingenfelter Bros., of Collins, Iowa, for a business property located there, which will be hereinafter

designated as the "Collins property." It was the agreement. that the stock of merchandise should be delivered to Lingenfelter Bros., free of incumbrance, and, to effect such agreement the Lingenfelter Bros., borrowed $5,700 of the Capital City State Bank of Des Moines, giving their note therefor, and the money so borrowed was used to pay off the Cottingham claim against the stock of goods. George W. Bowman then gave Lingenfelter Bros. his notes and a mortgage on the Collins property that he had received for the stock of merchandise for $6,400; this amount including the $5,700 paid by Lingenfelter Bros. to Cottingham, and, in addition thereto, $700 on account of sales that had been made from the stock while Bowman was in possession thereof. Sarah A. Bowman signed those notes as surety for her husband at the request of the Lingenfelters. Some time after these notes were given and before their maturity, Bowman was informd that they were held by the Capital City State Bank of Des Moines, and in January, 1906, one of the Lingenfelters called on the Bowmans at their home in Osceola, and represented to them that the bank wanted more security for the notes, and asked that the Bowmans give a mortgage on their homestead as such additional security. The Bowmans finally executed and delivered to Lingenfelter such a mortgage, upon the representations and under the conditions we shall hereinafter more fully notice. After this Bowman conveyed the Collins property to one Fowler, who took it subject to the mortgage thereon to the Lingenfelters, and still later the Bowmans, fearing that they would lose their homestead, began an action in equity in Clarke county for the cancellation of the mortgage thereon. This suit was dismissed without trial upon a stipulation, which will receive further attention as we proceed. Thereafter the Lingenfelter Bros. and the Capital City State Bank, as plaintiffs, foreclosed the mortgage on the Collins property, taking a judgment on the notes for the amount due thereon. In due time this

property was sold under foreclosure and was bid in by the Lingenfelter Bros. for $4,000. No redemption from said sale was made by Fowler, and Lingenfelter Bros. acquired title thereto by sheriff's deed, and now have the property. After this foreclosure and sale thereunder, the Lingenfelters began an action in Clarke county for the foreclosure of the mortgage on the Bowman homestead. This action was defended on the ground that the mortgage thereon was procured by fraud, and about the same time the Bowmans brought an action in equity for the cancellation of the stipulation of settlement in the case of the Bowmans against the Lingenfelters and the Capital City State Bank, to which we have heretofore referred, on the ground that it was procured by fraud and misrepresentation. These two later cases were consolidated and tried as one, and there was a decree adjudging that the mortgage on the homestead of the Bowmans was procured by fraud and cancelling the same, and further adjudging that the stipulation of settlement in the case of the Bowmans against the Lingenfelters and the Capital City State Bank be canceled. The Lingenfelters appeal. The Capital City State Bank had been eliminated from the litigation by voluntary dismissal before judgment. Sarah A. Bowman was not a party to any of the transactions culminating in the execution of the notes to the Lingenfelter Bros., and she was a surety only on said notes.

When she executed the mortgage on the homestead in Osceola, she simply pledged her interest therein as additional security to the bank for the notes that her husband had given to Lingenfelter Bros. and which they had deposited with the bank as collateral security for their loan. Mrs. Bowman was therefore a surety merely, and she is entitled to the protection of a surety, because she derived no advantage from any of the transactions.

1. SURETYSHIP: husband and wife.

Where a creditor is about to accept security from a

surety, it is his legal duty to "inform the surety of facts within his knowledge which would have the effect to increase the risks of the undertaking of the surety. . . . The law imposes on the creditor the duty of dealing with the surety at every step of the transaction with the utmost good faith. If the surety applies to him, before entering into the contract, for information touching any matter materially affecting the risk of the undertaking, he is bound, if he assumes to answer the inquiry at all, to give full information as to every fact within his knowledge; and he can do nothing to deceive or mislead the surety without vitiating the agreement." *Bank of Monroe v. Anderson Bros. et al.,* 65 Iowa, 692; *Barnes v. Savings Bank,* 149 Iowa, 367. Here it is clearly shown that Mrs. Bowman at first refused to execute the mortgage on the homestead, and that she was only induced to do so finally by the representations of Lingenfelter that the Collins property was worth much more than the debt sought to be further secured, and by his promise that they would see to it that the Collins property brought the amount of the debt and more, and that the homestead would not be called upon to bear any part of the burden. The representations as to the value of this property were false and known to be so at the time they were made. They had occupied this property for years and were then occupying it and knew its value, and this value they fixed at $4,000 when they purchased it at foreclosure sale, although they had represented to Mrs. Bowman that it was worth from $8,000 to $12,000. It will not do to say that such representations were the expressions of opinion only, and not binding on the Lingenfelters. The question of the value of the Collins property was very material to Mrs. Bowman, and, without these assurances of its value for the purpose of paying the debt for which it was security, she would not have pledged her homestead right for the purpose of satisfying the bank. She had a right to rely upon the repre-

*Marginal note:* 2. SAME: fraud of principal.

sentations, and it was the duty of the Lingenfelters, under the circumstances, to tell her the truth about the value of the property. We think the court rightly found that the mortgage in question was obtained by fraud and false representations.

The stipulation in the former suit, to which we have heretofore referred, provided that the Capital City State Bank should foreclose the mortgage on the Collins property and exhaust said property before claiming anything from the homestead property in Osceola, and that it would "only look to the Osceola property for any deficiency arising from the foreclosure or sale of said Collins property." And, after other agreements not of moment here, the stipulation concluded as follows: "This stipulation is a settlement of all matters involved in the petition and the several counts and amendments thereto; and said petition is dismissed in accordance with this stipulation, at the costs of plaintiff." The suit in which this stipulation was filed was the one brought by the Bowmans to set aside and cancel the mortgage on the Osceola homestead property on the ground that it was obtained by fraud. The attorney, who represented the Bowmans at that time, testified in this case that he was induced to enter into such stipulation by the representations of the Lingenfelters that the Collins property was ample to pay the mortgage given thereon by Bowman, and in the belief that no claim would ever be made against the homestead property for a deficiency. It is further conclusively shown that the stipulation was hurriedly prepared and signed by him for the Bowmans, and that it was so signed without consultation with either of them and without specific authority to make the same.

3. ATTORNEY AND CLIENT: authority of attorney: ratification.

While section 319, subd. 2, of the Code, gives an attorney power "to bind his client to any agreement, in respect to any proceeding within the scope of his proper duties and powers," we are of the opinion that this stipula-

tion went so far beyond the proper duty and power of the attorney in the case then pending as to render it without authority. If the stipulation is to be given the broad effect claimed for it by the appellants, it entirely deprived the Bowmans of a just cause of action against the Lingenfelters at least, and, if that be true, the attorney had no authority to enter into it by virtue of his general employment to bring and prosecute the suit, and it is conclusively shown that he had no special authority in the matter. The transaction falls squarely within the rule announced in the following cases: *Ohlquest v. Farwell,* 71 Iowa, 233; *Rhutasel v. Rule,* 97 Iowa, 20; *Bigler v. Toy,* 68 Iowa, 687; *Drain v. Dogget,* 41 Iowa, 682; *Kilmer v. Gallaher,* 112 Iowa, 583. Appellants say, however, that, even if the stipulation was made without authority, it was afterwards ratified by the Bowmans, and hence is still effective. But the Bowmans never had any such knowledge of the terms and effect of the language used in the stipulation as would amount to a ratification.

Another reason why the appellants should not prevail in either of these consolidated actions is because the mortgage on the homestead was given for the additional security of the Capital City State Bank, and not as additional

4. MORTGAGES: satisfaction and discharge.

to the appellants. Appellants procured the mortgage on that express representation, and when the appellants paid their indebtedness to the bank and the Bowman notes were returned to the appellants, as they were before this foreclosure was begun, the mortgage on the homestead had performed its full function, and was thereafter of no effect so far as appellants were concerned. Appellants obtained a stock of merchandise free and clear of incumbrance, worth $9,000, and the Collins property, which they represented as worth at least $8,000, and which they now have for $5,700, the amount they borrowed of the bank to pay off the Cottingham mortgage. The appellees have nothing left but their home-

stead, and we think the trial court correctly held that the equities were with the appellees.. Its judgment is therefore affirmed.

Appellees made the point that the record had not been so preserved as to enable us to dispose of the case on the merits, but we have preferred to do so in view of the dispute over the certification.—*Affirmed.*