ROBBINS-SANFORD MERCANTILE COMPANY *v.* JOHNSON.

Opinion delivered December 1, 1924.

1. PRINCIPAL AND SURETY—RIGHT OF SURETY TO EXONERATION.— Where a principal and surety mortgage their separate properties to secure the principal's debt, the surety is entitled to have the property of the principal sold first, and the proceeds applied in satisfaction of the debt.

2. PRINCIPAL AND SURETY—SURETY'S RIGHT OF EXONERATION.— Where tenants in common executed a mortgage on the common property to secure the individual indebtedness of one of the co-tenants, the surety's right to have the principal's property first resorted to was superior to the lien of a subsequently acquired judgment against the principal in favor of a third person.

3. PRINCIPAL AND SURETY—RIGHT OF SURETY TO INTERVENE IN FORE-
   CLOSURE SUIT.—Where two tenants' in common executed a mort-
   gage to secure an indebtedness of one of them, the surety who
   was made a party by publication of a warning order, but made
   no appearance in the foreclosure suit prior to the sale, was
   properly admitted to intervene thereafter and assert his prior
   equity as surety in the proceeds of the sale, without filing the
   bond required by Crawford & Moses' Digest, §§ 6259-6266.

Appeal from White Chancery Court; *John E. Martineau,* Chancellor; affirmed.

### STATEMENT OF FACTS.

This was a suit in equity to foreclose certain mortgages on real estate, and the appeal involves the question of priority of liens between one of the mortgagees and one of the mortgagors as surety of the other mortgagor.

The case was tried upon an agreed statement of facts, which, so far as is necessary to decide the issues raised by the appeal, is as follows: E. E. Stone and H. H. Johnson own, as tenants in common, about 560 acres of land in section 1. E. E. Stone is the owner of 80 acres of land in section 11. All of said lands are in township 6 north, range 5 west, in White County, Arkansas. On October 17, 1919, E. E. Stone and wife executed a deed of trust on the 80 acres of land in section 11 to secure an indebtedness of $1,000, which he owed the Union Bank & Trust Company. The deed of trust contained a provision that it should stand as security for any other indebtedness of the said E. E. Stone, or for any renewal indebtedness. The deed of trust was duly filed for record on October 20, 1919. On June 3, 1920, E. E. Stone and wife executed a deed of trust on certain lands, including the 80 acres of land in section 11, to secure an indebtedness of $2,000 which Stone owed the Robbins-Sanford Mercantile Company. The deed of trust provides that it is taken subject to a prior deed of trust on the same lands in favor of the Union Bank & Trust Company. This deed of trust was filed for record on June 9, 1920.

On February 12, 1921, E. E. Stone and wife and H. H. Johnson and wife executed a deed of trust on the 560 acres of land in section 1 to secure an additional indebtedness which E. E. Stone owed the Union Bank & Trust Company. This deed of trust also contained a clause that it should stand as security for any and all indebtedness due by the parties thereto to said bank and trust company. The deed of trust was filed for record on February 16, 1921.

It was agreed that W. H. Johnson held the prior lien upon the 560 acres of land in section 1 for the sum of $852.80, with interest from April 16, 1923, at 7 per cent. per annum, for the balance due on the purchase price of said land due by E. E. Stone and H. H. Johnson. All of said lands were sold by the commissioner of the chancery court on May 25, 1923, in accordance with the foreclosure decree rendered on April 16, 1923.

Pursuant to the provisions of the decree, the 560 acres of land in section 1 were sold separately, and brought the sum of $3,600.50. The 80 acres of land in section 11 was purchased by W. A. Leach at said sale for $1,425. Leach and the Robbins-Sanford Mercantile Company were the only bidders on this tract of land. Robbins-Sanford Mercantile Company purchased the other lands embraced in the deed of trust executed in its favor for $1,000. The amount due the Union Bank & Trust Company by E. E. Stone is $2,578.15, with interest from April 16, 1923, at 10 per cent. per annum.

On the 8th day of November, 1921, the indebtedness to the Union Bank & Trust Company by E. E. Stone was consolidated and a note given by Stone for $4,188, in lieu of the indebtedness mentioned in the deed of trust executed by him individually on October 17, 1919, and the deed of trust executed by E. E. Stone and H. H. Johnson on February 12, 1921. Stone then placed in the Union Bank & Trust Company a life insurance policy payable to his estate in the sum of $2,000. Subsequently Stone died, and this policy was collected by the bank in the sum of $1,941.48, which was credited on the note last mentioned.

This left a balance due the bank of $2,578.15 on April 16, 1923, as above set forth. The amount due Robbins-Sanford Mercantile Company was $2,297.13.

H. H. Johnson was allowed to intervene in the case before the proceeds arising from the sale of the lands had been paid out by the commissioner appointed to make the sale. The commissioner was directed to first take out of the proceeds the cost of sale and the taxes paid on the lands. The commissioner was then directed to pay W. H. Johnson the sum of $882.64 out of the proceeds of the land in section 1. This left the sum of $2,740.30 to be distributed to the parties to this suit. One-half of this amount was directed to be paid to the Union Bank & Trust Company and one-half to the intervener, H. H. Johnson.

The Robbins-Sanford Mercantile Company excepted to the ruling of the chancery court in decreeing that H. H. Johnson had a prior claim to said sum of $1,370.15, which was one-half of the proceeds of the sale of the lands in section 1, after paying the taxes and the balance of the purchase price of said lands. To reverse the decree of the court in accordance with the findings of the chancellor, the Robbins-Sanford Mercantile Company has duly prosecuted an appeal to this court.

*Brundidge & Neelly,* for appellant.

*John E. Miller,* for appellee.

HART, J., (after stating the facts). The agreed statement of facts shows that E. E. Stone and H. H. Johnson are tenants in common of the 560 acres of land in section 1, and that they executed a deed of trust on it in favor of the Union Bank & Trust Company to secure an indebtedness which E. E. Stone individually owed it. After the land in section 1 had been sold under the mortgage foreclosure decree, H. H. Johnson was allowed to intervene in the suit, on the ground that he was entitled to be subrogated to the rights of the mortgagee, Union Bank & Trust Company, as to one-half of the proceeds arising from the foreclosure sale of these lands.

It is well settled that, when a principal and surety each mortgages his own property to secure the debt of the principal, the surety is entitled to have the property of the principal sold first, and the proceeds of the sale applied in satisfaction of the debt. *Kempner* v. *Dooley,* 60 Ark. 526.

Counsel for appellant admit the equitable rule of placing the charge upon the property of the principal debtor in exoneration of the estate of the surety, but deny its application under the facts in this case. They contend that the equities of appellant are superior to those of the intervener, H. H. Johnson, and base their claim in this respect on the fact that appellant had a valid mortgage executed in its favor by E. E. Stone on lands owned by him, prior to the execution of the mortgage by E. E. Stone and H. H. Johnson to secure an indebtedness of Stone to the Union Bank & Trust Company. The mortgage executed by Stone to secure his indebtedness to appellant was upon property owned by him individually, and was not upon the property owned by him as tenant in common with H. H. Johnson, which was mortgaged by them to secure an indebtedness due by Stone to the Union Bank & Trust Co. In short, appellant had no mortgage on the property embraced in the mortgage given by E. E. Stone and H. H. Johnson to the Union Bank & Trust Company. It is true that he acquired a lien on all the lands of Stone when he obtained a judgment against him in this case; but his judgment lien did not entitle him to a preference over prior equities.

. In the case of *Watkins* v. *Wassell,* 15 Ark. 73, it was held that the interest of a judgment creditor, under his lien, in the real estate of his debtor, is limited to the actual interest of the debtor at the time the lien attaches, and that he holds it free from subsequent alienations or incumbrances, but subject to all prior alienations or incumbrances.

The court quoted with approval from *Keirsted* v. *Avery,* 4 Paige Ch. N. Y. p. 9, the following: "Whatever doubts may have once existed on this subject, it is

now settled that, a judgment being merely a general lien on the land of the debtor, the lien is subject to every equity that existed against the land in the hands of the judgment debtor at the time of the docketing of the judgment, and a court of chancery will protect the equitable rights of third persons against the legal lien, and will limit that lien to the actual interest which the judgment debtor has in the estate.''

In short, it was held that a judgment lien amounts to but a security against subsequent purchasers and incumbrancers, and can only operate upon the interest which the debtor had at the time of its rendition. Under this rule, the equitable lien of H. H. Johnson as a surety of E. E. Stone, being prior in point of time to the judgment lien obtained by appellant, is paramount to the lien of appellant as a judgment creditor, because it thereby acquired only a general lien upon the estate of Stone, which, in chancery, is not permitted to prevail as against the prior equity of Johnson as surety of Stone.

As we have already seen, the fact that appellant had a mortgage on other lands of Stone would not give it a prior equitable lien to that existing in favor of Johnson as a surety of Stone under the mortgage given by them both to the Union Bank & Trust Company. Therefore we are of the opinion that the chancellor correctly decided this issue in favor of the intervener, H. H. Johnson.

It is next insisted that the court erred in allowing H. H. Johnson to intervene after the sale of the lands under the foreclosure decree, and assert his prior equitable lien as surety on the proceeds of the sale. We do not think that there was any error in this respect, for two reasons. In the first place, it may be said that, although H. H. Johnson was made a party defendant to the foreclosure suit, he filed no answer, and his rights were not adjudicated in the foreclosure decree. On the other hand, the court retained control of the cause for such further orders as might be proper to enforce the rights of the parties to the suit and the rights of such others as might thereafter become parties to the action. The right of

Johnson, as surety, to be subrogated to the rights of the creditor against his principal, was separate and distinct from the issues raised in the foreclosure proceedings between the mortgagees and the other lien claimants. Therefore it was not adjudicated by that decree, and the court had the power to retain control of and to continue the cause as to his rights as being a distinct and separate issue. *Davis* v. *Cook,* 155 Ark. 613.

In the second place, service was had upon H. H. Johnson by publication of a warning order. Under our Code he had two years within which to appear in court and move to have the action retried. Crawford & Moses' Digest, §§ 6259-6266. It is true that Johnson did not give the bond required by the statute, but the fund on which he sought to obtain a lien was still in the hands of the court, and no prejudice could have resulted to appellant from his failure to give the bond required by parties constructively summoned, who seek a retrial of the action within the time prescribed by statute.

It is conceded by counsel for appellant that the court properly directed the payment of taxes upon the different tracts of land, and correctly decided that W. H. Johnson had a paramount lien on the lands purchased from him in section 1 by Stone and H. H. Johnson for the balance of the purchase price.

The result of our views is that the decree of the chancery court was correct, and must be affirmed.