FRANK F. CLINDININ, Trustee, Appellant, v. DORA GRAHAM et al., Appellees.

No. 44023.

October 26, 1937.

J. G. Shifflett, for appellant.

Talbott & Talbott, for appellees.

KINTZINGER, J.—Plaintiff commenced this action as a trustee in bankruptcy of the estate of the defendant, Brownlie Graham, to set aside a deed executed by Brownlie Graham to Dora Graham, his wife, conveying his one-half interest in 160 acres of land belonging jointly to the defendants, Brownlie Graham and Dora Graham, because it was given in fraud of creditors and without consideration. The defendant, Dora Graham, alleges that on February 27, 1928, the defendant, Brownlie Graham, was personally indebted to various parties in the sum of $10,000, and arranged to and did borrow said sum from the Grinnell State Bank, and to secure said loan, she, without any consideration, joined in the note to the Grinnell State Bank, secured by a mortgage on the entire 160 acres involved in this action, one-half of which was owned by each. She further alleges that Brownlie Graham borrowed this money to pay his own debts, and as between the defendants, Brownlie Graham was the principal debtor, and this defendant, Dora Graham, was liable only as surety. She further alleges that said note and mortgage were assigned to a third party, and the same have been foreclosed and the property sold under special execution for the sum of $10,684.28, and that the period for redemption from said execution sale would expire March 7, 1937. Defendant Dora Graham alleges that the real estate involved is worth not to exceed $100 per acre, and the value of Brownlie Graham's interest therein is not worth to exceed $8,000. She further alleges that as between the defendant, Dora Graham, and the

defendant, Brownlie Graham, this defendant, Dora Graham, is only a surety for the payment of the principal's debt, and that the property should first be applied to the satisfaction of his debt; that the value of his one-half interest in said property is less than the mortgage. Therefore, neither said Brownlie Graham nor any of his creditors had any interest, claim or rights in the premises in suit, or any part thereof, paramount to the appellee's equitable right to have her husband's interest in said premises first exhausted towards the payment of the mortgage debt; that because of these facts no interest or benefit can accrue to the estate of Brownlie Graham, bankrupt, if the conveyance was set aside, and the defendant, Dora Graham, therefore, asks a dismissal of the action.

The lower court found in favor of defendant, Dora Graham, and plaintiff appeals.

Mr. and Mrs. Graham acquired the 160 acres involved in this action, each taking title to an undivided one-half interest therein, and no question is raised as to the validity of their title thereto. Mr. Graham operated this 160-acre farm for himself and wife, and he personally received all the income therefrom.

In 1925, Mr. Graham owned 40 shares, Mrs. Graham owned 8 shares, and their daughter 2 shares of stock in the First National Bank of Brooklyn. This bank became involved financially, and stock assessments were made against its stockholders. The assessments against the Graham family were all paid voluntarily by Mr. Graham, without any agreement on his wife's part to repay him therefor. In similar manner he also paid certain taxes levied against Mrs. Graham's property. The amounts paid for such stock assessments and taxes amounted to about $1,800. These amounts were all paid by Mr. Graham in March, 1925, from proceeds of money he borrowed from a Mrs. Breniman on his personal note of $6,500. Mrs. Graham received none of the proceeds therefrom. The balance of the $6,500 not used in the payment of the foregoing amounts was all used by Mr. Graham in the payment of other personal obligations. He paid these assessments and taxes partly out of the income of the 160-acre farm and partly out of the funds borrowed by himself personally on his own personal notes.

In 1928, Mr. Graham obtained the mortgage loan of $10,000 on the entire 160 acres in question from the Grinnell State Bank.

The record shows that Mrs. Graham had nothing to do with the negotiations for this loan, but at the request of her husband signed the note and mortgage therefor. The proceeds of this $10,000 loan were used by Mr. Graham to pay off the Breniman note of $6,500 and other personal obligations he owed to the Grinnell State Bank. All of the debts so paid were the personal obligations of Mr. Graham, none of which had been assumed by Mrs. Graham.

The $10,000 note and mortgage executed to the Grinnell State Bank were by that bank sold to a third party, who, in default of payment when due, commenced foreclosure proceedings thereon, and the land was sold thereunder at sheriff's sale for $10,684.28. It was stipulated by the parties that the 160 acres of land foreclosed were worth $16,000.

After executing the $10,000 note and mortgage, Mr. Graham again became indebted to the Grinnell State Bank on his own personal account in the sum of $5,400, which was reduced to judgment in 1935.

In September, 1934, he became seriously ill and transferred his undivided one-half interest in the 160 acres in question to Dora Graham, his wife, defendant herein. In December, 1935, Mr. Graham was adjudged a bankrupt and plaintiff was appointed trustee of his estate. The record shows that his estate was insolvent, and this action was commenced to set aside the conveyance to Mrs. Graham as being made to defraud his creditors.

The principal defense relied upon by Dora Graham, the defendant, is that her liability upon the $10,000 note and mortgage executed to the Grinnell State Bank was only that of a surety for the payment of the principal's debt, and that under such liability, the property of her husband should first be applied to the satisfaction of said debt; she alleged that the amount of his indebtedness as principal upon the mortgage exceeded the entire value of his interest in the land, which was shown to be only $8,000; and that as this amount is less than the amount of his mortgage indebtedness, all of his interest in the 160-acre farm was exhausted by the foreclosure proceedings; that the creditors of Mr. Graham's estate, therefore, have no right or equity in the land over and above the obligation of Mr. Graham as principal on the $10,000 mortgage; that, as all of his interest has been exhausted by the foreclosure proceedings, he has no

interest in the land which could in any manner accrue to the bankrupt estate of Brownlie Graham.

■■■ I. Appellee contends that, under the doctrine of suretyship, where a married woman mortgages her own separate property to secure the separate debt of her husband, and no consideration is given to her therefor, the husband is considered the principal and the wife a surety on such indebtedness. Such a rule is recognized by the greater weight of authorities. Bockholt v. Kraft, 78 Iowa 661, 43 N. W. 539; Bankers Surety Co. v. Linder, 156 Iowa 486, 137 N. W. 496; Lingenfelter Bros. v. Bowman, 156 Iowa 649, 137 N. W. 946; Mockler v. Lohman, 185 Iowa 448, 170 N. W. 744; First Nat. Bank v. Ten Napel, 198 Iowa 816, loc. cit. 817 and 818, 200 N. W. 405; Dibble v. Richardson, 171 N. Y. 131, 63 N. E. 829; Field v. Campbell, 164 Ind. 389, 72 N. E. 260, 108 Am. St. Rep. 301; First Nat. Bank v. Bertoli, 87 Vt. 297, 89 Atl. 359, Ann. Cas. 1917B, 590; Bull v. Coe, 77 Cal. 54, 18 Pac. 808, 11 Am. St. Rep. 235; Siebert v. Quesnel, 65 Minn. 107, 67 N. W. 803, 60 Am. St. Rep 441; Jenkins v. Daniel, 125 N. C. 161, 34 S. E. 239, 74 Am. St. Rep. 632; Fleming v. Barden, 126 N. C. 450, 36 S. E. 17, 53 L. R. A. 316, 78 Am. St. Rep. 671; Fitcher v. Griffiths, 216 Mass. 174, 103 N. E. 471; Hall v. Hyer, 48 W. Va. 353, 37 S. E. 594; Shew v. Call, 119 N. C. 450, 26 S. E. 33, 56 Am. St. Rep. 678; 30 Corpus Juris 909, §608; 30 Corpus Juris 895, §589; 21 R. C. L. 957.

In Lingenfelter Bros. v. Bowman, 156 Iowa 649, loc. cit. 652, 137 N. W. 946, this court says:

"When she (the wife) executed the mortgage on the homestead * * *, she simply pledged her interest therein as additional security to the bank for the notes that her husband had given to Lingenfelter Bros. and which they had deposited with the bank as collateral security for their loan. Mrs. Bowman was therefore a surety merely, * * * because she derived no advantage from any of the transactions."

In Siebert v. Quesnel, 65 Minn. 107, 67 N. W. 803, loc. cit. 804, 60 Am. St. Rep. 441, the court said:

"Mrs. Langevin joined in all of the covenants contained in the mortgage, binding herself, her heirs, * * * and administrators * * * to pay the * * * note, thus becoming obligated to pay the mortgage debt. But primarily it was the debt of Mr.

Langevin. This clearly appears from the note and mortgage, and was actually known to the mortgagee. Mrs. Langevin took no part in the negotiations which led up to the execution of the papers, and had nothing to do with the transaction, except to sign the mortgage and acknowledge its execution. * * * She did not contract for or receive, either in person or estate, any part of the consideration for the note, nor was her separate property bound in any way for the pre-existing debt which formed the consideration. It is well settled that a wife is entitled to the ordinary rights and privileges of a surety, where she mortgages her separate estate for the debt of her husband. * * * Although Mrs. Langevin was a joint principal or obligor, she was also and in fact a surety, and is entitled to all of the rights of a surety * * * .''

In Fitcher v. Griffiths, 216 Mass. 174, 103 N. E. 471, the court says:

''Where a wife releases her dower right by joining in a mortgage to secure a debt of her husband, she stands in a position analogous to a surety for his debt. A wife, who has mortgaged her separate estate to secure a debt of her husband is entitled to exoneration out of her husband's estate.''

In Shew v. Call, 119 N. C. 450, 26 S. E. 33, 56 Am. St. Rep. 678, the court said:

''The debt which the mortgage was given to secure was the liability of the husband. His land and that of plaintiff's were both included in the mortgage to secure the husband's liability. This being so, the land of the wife * * * was but security for the husband. And his land should first be made liable and first sold in exoneration of the wife's land.''

''It is well settled that a wife who executes a mortgage on her separate property to secure her husband's debt occupies the position of a surety, and is entitled to the ordinary rights and privileges of a surety.'' 21 R. C. L. 957.

It is conceded that where a wife signs a note and mortgage for her husband to secure his personal indebtedness, and receives no consideration therefor, the husband will be considered the principal and the wife a surety thereon.

Plaintiff in this action, however, contends that the wife did

receive a consideration for the execution of this note and mortgage because the husband paid his wife's assessments and taxes hereinabove referred to, and, therefore, cannot be considered a surety upon the note and mortgage.

Appellee contends, however, that the payments made on his wife's stock assessments and taxes were entirely voluntary on his part, were not made at her request, but were voluntarily paid for out of his own funds without any agreement on her part to reimburse him therefor. Such a conclusion is borne out by the fact that these stock assessment and tax payments were not paid out of the proceeds of the $10,000 note and mortgage executed on the 160 acres of land. On the contrary, such payments were made long prior thereto, out of earnings from the farm and from the proceeds of other notes executed by Mr. Graham.

The record shows that Mrs. Graham received no part of the proceeds of the $10,000 mortgage in question. Any payments alleged to have been made by her husband out of the proceeds of the Breniman note constituted no personal obligation of Mrs. Graham, nor was she ever asked by Mr. Graham to repay him therefor. The obligation of the Breniman note was purely a personal indebtedness of Mr. Graham. For these reasons it is our conclusion that Mrs. Graham received no part of the proceeds of the note and mortgage on the 160 acres of land.

We are, therefore, constrained to hold that Mrs. Graham became a surety for her husband, Brownlie Graham, upon the note and mortgage executed upon the 160 acres of land, and as such is entitled to all the benefits of an ordinary surety thereon.

II. Appellee contends that these benefits would in equity require the interest of Mr. Graham in the 160 acres to be first exhausted and applied to the payment of the amount due on the mortgage. As this indebtedness exceeded $10,000, and as the value of Mr. Graham's entire interest in the land was only $8,000, appellee contends there was no salvage left therein for his other creditors; that they had no lien thereon, and under the doctrine of suretyship, Mrs. Graham would be entitled to an equitable lien, including the right of redemption in and to any part of this land owned by herself and Mr. Graham. At the time the deed to her was executed, Brownlie Graham had no real interest in the land. Appellee also contends that as he had al-

ready conveyed his interest in the land to Mrs. Graham, equity will consider that as done which ought to have been done, and that the deed executed by Mr. Graham to his wife cannot be set aside in this action.

■■■ Appellee contends that where the principal and surety each mortgage their own separate property to secure the debt of the principal, the surety is in equity entitled to have the property of the principal first exhausted, and if the principal's indebtedness exceeds the value of his interest in the mortgaged premises, the surety is entitled to subrogation out of the principal's interest therein, and that she is also entitled to exoneration from any liability to the principal's estate. Such is the general rule. Bockholt v. Kraft, 78 Iowa 661, 43 N. W. 539; Guiher v. Huffman, 136 Iowa 509, 109 N. W. 469; Bankers Surety Co. v. Linder, 156 Iowa 486, 137 N. W. 496; Robbins-Sanford Merc. Co. v. Johnson, 166 Ark. 330, 266 S. W. 260, 37 A. L. R. 1258. See, also, other cases hereinabove cited.

In Robbins-Sanford Merc. Co. v. Johnson, 166 Ark. 330, 266 S. W. 260, 37 A. L. R. 1258, the court said:

"It is well settled that when a principal and surety each mortgages his own property to secure the debt of the principal, the surety is entitled to have the property of the principal sold first and the proceeds of the sale applied in satisfaction of the debt."

A well considered discussion of this rule with a large number of cases supporting the same is found in an annotation to Robbins-Sanford Merc. Co. v. Johnson (Ark.), 37 A. L. R. 1258, loc. cit. 1262.

We are constrained to hold that this equitable principle applied in this case.

■■■ III. Appellee also contends that even though the payments referred to as having been made by Mr. Graham on his wife's stock assessments and taxes should be considered a consideration for the execution of the $10,000 note and mortgage, each party should be considered a principal for the benefits received by them individually and as surety for that part of the benefits received by the comaker.

This doctrine is set out in 50 Corpus Juris 26, Sec. 33, as follows:

"Where two or more persons enter into a joint obligation, as between themselves, each is a principal for his proportionate share of the debt or obligation, or so far as his own acts are concerned, and a surety as to the shares or acts of the others." Clark v. Dane, 128 Ala. 122, 28 So. 960; Chipman v. Morrill, 20 Cal. 130; Waldrop v. Wolff, 114 Ga. 610, 40 S. E. 830.

Admitting for the purpose of argument, but not conceding it, that the wife should be held to have received a benefit out of the proceeds of the $10,000 mortgage because her husband had prior thereto paid stock assessments and taxes levied against her property, the wife would, under the doctrine herein set out, be a principal for that much of the benefits received by her out of the proceeds of the mortgage. The record shows that the total amount alleged to have been paid by the husband on Mrs. Graham's stock assessments and taxes was only $1,800. Therefore, she might be liable as *principal* for $1,800 of the $10,684.28 mortgage debt, and as surety for the balance amounting to about $8,884.28. As the value of the husband's interest in this land was only $8,000, it necessarily follows that under this theory of liability, for the benefits received by her, Mr. Graham had no interest remaining in the land subject to payment of other debts.

It is, therefore, our conclusion that under either theory hereinabove discussed, Mrs. Graham, appellee, was in equity entitled to whatever interest Mr. Graham had remaining in the mortgaged property, and was entitled to subrogation thereto. This subrogation was in fact accomplished by the deed in question conveying all of his interest in the land to his wife.

For the reasons hereinabove expressed, it is our conclusion that the action of the lower court was right in finding in favor of the defendant. The decree of the lower court is, therefore, hereby affirmed.—Affirmed.

HAMILTON, C. J., and all Justices concur.